| IN THE MATTER OF: | |
|---|---|
| nCoat, Inc.,<br>nTech, Inc.,<br>MCC, Inc., and<br>High Performance Coatings, Inc.,<br><br>Debtors. | Case No. 10- _11512_<br>Case No. 10- _11513_<br>Case No. 10- _11514_<br>Case No. 10- _11515_<br><br>Chapter 11 |

## Motion For Authority To Obtain Post-petition Financing

NOW COME nCoat, Inc. ("nCoat"), nTech, Inc. ("nTech"), MCC, Inc. ("MCC") and High Performance Coatings, Inc. ("HPC" and collectively, the "Debtors"), and move the Court pursuant to §364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure as follows:

1.      On August 16, 2010 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code. The Debtors continue in possession of their respective assets and operate their businesses as debtors-in-possession.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Shortly before the Petition Date, the Debtors entered into negotiations with Fort Ashford Funds, LLC ("Fort Ashford" or the "Lender"), whereby Fort Ashford (i) loaned $142,500 to the Debtors secured by a blanket lien upon substantially all assets of the Debtors, subject to existing liens (the "Prepetition Loan"), (ii) agreed to loan the Debtors additional sums as set forth below, subject to the granting of certain protections and approval by the Court (the "Post-petition Loan"), and (iii) entered into an Asset Purchase Agreement pursuant to which the Debtors agreed to sell and Fort Ashford agreed to purchase certain assets and for certain executory contracts or leases to be assumed and assigned to Fort Ashford at closing, under a mutually acceptable sale process and subject to approval by the Court.

4.      In furtherance of the foregoing, the Debtors executed Promissory Notes and Security Agreements (collectively, the "Prepetition Loan Documents") which evidenced the

Indebtedness and granted Fort Ashford a security interest in all or substantially all of the Debtors' tangible and intangible personal property, and Fort Ashford caused UCC-1 form financing statements to be duly recorded to properly perfect the security interests granted by the Debtors.

5.     The Debtors and Fort Ashford also executed the Asset Purchase Agreement for the sale of substantially all of the Debtors' tangible and intangible personal property, excluding certain assets which are to be retained for the benefit of the estate, and the Debtors have filed a Motion in which the Debtors seek approval of the sale on an expedited basis, free and clear of all claims, liens, encumbrances and interests, pursuant to a sale procedure which provides for the submission of higher and better bids, an auction, and approval by the Court after notice and hearing.

6.     The Debtors have little in the way of cash reserves, and in the absence of sufficient revenues will need post-petition financing to pay on-going costs of operating, insuring, preserving, and protecting the business and property of the estate pending the sale. The Debtors are unable to obtain unsecured credit or credit secured only by a junior lien from any source, and the Debtors are able to obtain financing from Fort Ashford only because the financing is necessary to preserve the potential sale of the Debtors' business as a going concern, and only upon the terms and conditions set forth below.

7.     The Debtors seek authority to obtain post-petition financing from the Lender in accordance with the proposed order attached hereto as **Exhibit A**, the proposed Post-petition Financing Agreement attached hereto as **Exhibit A-1**, and the proposed Budget attached hereto as **Exhibit A-2**. The post-petition financing would be in an amount not to exceed $200,000 (including a reserve for the agreed Carve-out for professional fees), all of which would (i) bear interest at ten percent (10%) per annum; (ii) be due and payable in full upon the earliest of (a) December 31, 2010, (b) the date on which payment of the Obligations is accelerated by Lender as provided in §10 of the Financing Agreement, and (c) September 30, 2010, in the event that the Final Order shall not have been entered on or before such date; (iii) be used to fund operations through the sale date, (iv) be secured by a first (priming) lien upon all assets of the Debtors' estates, excluding bankruptcy causes of action or the proceeds or recoveries thereof, and (v) any deficiency would be treated as a super-priority administrative expense; however, the super-priority administrative expense status would be subject and subordinate to the payment (a) of the

fees specified in 28 U.S.C. § 1930. and (b) a carve out (the "Carve Out") in an amount not to exceed $100,000.00 ($75,000 for the Debtors' professionals and $25,000 for the professionals for any official committee) for the payment of allowed but unpaid fees of such professionals approved by the Court pursuant to sections 327 or 328 of the Bankruptcy Code in the event of a default under the DIP Financing Agreement and/or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code.

8.    As set forth in the Debtors' schedules, the following parties are listed as secured creditors (the "Existing Secured Creditors"):

    a.  Balboa Capital/Bank of America Leasing. capital lease/secured credit transaction, approximately $49,000 secured by certain equipment owned by HPC.

    b.  GE Commercial Finance. capital lease/secured credit transaction, approximately $25.000 secured by certain equipment owned by HPC.

    c.  GE Commercial Finance. capital lease/secured credit transaction, approximately $10,600 secured by certain equipment owned by HPC.

    d.  Huntington National Bank, capital lease/secured credit transaction. approximately $77.800 secured by certain equipment owned by HPC.

    e.  Key Equipment Leasing, capital lease/secured credit transaction, approximately $98,400 secured by certain equipment owned by HPC.

    f.  Royal Bank of America, capital lease/secured credit transaction, approximately $62,300 secured by certain equipment owned by HPC.

    g.  Michael Novakovic, approximately $182.100 secured by lien upon certain equipment owned by MCC, Inc.

    h.  Fort Ashford Funds. LLC, approximately $140,000 secured by blanket lien upon all assets of all the Debtors. subject to pre-existing liens.

9.    The Debtors propose that the Existing Secured Creditors be provided a lien (the "Adequate Protection Lien") upon all assets of the Debtors' estates, excluding only Bankruptcy Causes of Action or the proceeds thereof. which lien would be junior to all existing liens and to the rights of Lender to repayment of the Post-petition Obligations, as adequate protection for the effect of the priming lien granted to the Lender.

10.    An order granting interim relief. followed by a final hearing at some future date selected by the Court, would not prejudice the rights of creditors in this proceeding. and the use of such funds is necessary to continue operations without interruption and preserve the value of the estate for creditors.

Wherefore. the Debtors pray the Court for the following relief:

1.    That an interim financing order in the form attached hereto as **Exhibit A** be entered by this Court after notice and interim hearing. (i) authorizing the Debtors to obtain post-

petition financing and cash advances in an amount not exceeding $50,000 pending a final hearing, upon the terms and conditions set forth in **Exhibit A-1** and **Exhibit A-2,** and (ii) granting the Existing Secured Creditors the adequate protection lien as set forth above.

2.     That a final hearing be held regarding this motion, the interim financing order, and the Debtors' request for a final financing order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3.     Such other relief as the Court may deem necessary and proper.

Respectfully submitted on behalf of the Debtors, this the 16th day of August, 2010.

/s/ John A. Northen

**Counsel for the Debtors:**
Northen Blue, LLP
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Stephanie Osborne-Rodgers, NCSB #29374
sor@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

| IN THE MATTER OF: | |
|---|---|
| nCoat, Inc., <br> nTech, Inc., <br> MCC, Inc., and <br> High Performance Coatings, Inc., <br><br> Debtors. | Case No. 10-11512 <br> Case No. 10-11513 <br> Case No. 10-11514 <br> Case No. 10-11515 <br><br> Chapter 11 |

## Interim Order Granting Authority To Obtain Post-petition Financing And Providing Notice Of Further Hearing

This matter came before the Court to consider the Motion For Authority To Obtain Post-petition Financing (the "Motion") filed by nCoat, Inc. ("nCoat"), nTech, Inc. ("nTech"), MCC, Inc. ("MCC") and High Performance Coatings, Inc. ("HPC" and collectively, the "Debtors") pursuant to §364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

After considering the matters set forth in the Motion, the evidence presented, and the arguments of counsel, the Court makes the following findings, conclusions and Orders, as follows:

1. On August 16, 2010 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code. The Debtors continue in possession of their respective assets and operate their businesses as debtors-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Prior to the Petition Date, the Debtors entered into negotiations with Fort Ashford Funds, LLC ("Fort Ashford" or the "Lender"), whereby Fort Ashford (i) loaned $142,500 to the Debtors secured by a blanket lien upon substantially all assets of the Debtors, subject to existing liens (the "Prepetition Loan"), (ii) agreed to loan the Debtors additional sums as set forth below, subject to the granting of certain protections and approval by the Court (the "Post-petition Loan"), and (iii) entered into an Asset Purchase Agreement (the "Sale Agreement") pursuant to



EXHIBIT

A

to sell and Fort Ashford agreed to purchase certain assets and for certain executory contracts or leases to be assumed and assigned to Fort Ashford at closing, under a mutually acceptable sale process and subject to approval by the Court.

4.      The Debtors executed Promissory Notes and Security Agreements (collectively, the "Prepetition Loan Documents") which evidenced the Indebtedness and granted Fort Ashford a security interest in all or substantially all of the Debtors' tangible and intangible personal property, and Fort Ashford caused UCC-1 form financing statements to be recorded to perfect the security interests granted by the Debtors. The Debtors and Fort Ashford also executed the Asset Purchase Agreement for the sale of substantially all of the Debtors' tangible and intangible personal property, excluding certain assets which are to be retained for the benefit of the estate, and the Debtors have filed a Motion in which the Debtors seek approval of the sale on an expedited basis, free and clear of all claims, liens, encumbrances and interests, pursuant to a sale procedure which provides for the submission of higher and better bids, an auction, and approval by the Court after notice and hearing.

5.      The Debtors have little in the way of cash reserves, and in the absence of sufficient revenues will need post-petition financing to pay on-going costs of operating, insuring, preserving, and protecting the business and property of the estate pending the sale. The Debtors are unable to obtain unsecured credit or credit secured only by a junior lien from any source, and the Debtors are able to obtain financing from Fort Ashford only upon the terms and conditions set forth below.

6.      The Debtors seek authority to obtain post-petition financing from the Lender in accordance with the Post-petition Financing Agreement attached hereto as **Exhibit A-1**, in an amount (the "Post-petition Indebtedness") not to exceed $200,000 (including a reserve for the agreed Carve-out for professional fees), all of which would (i) bear interest at ten percent (10%) per annum; (ii) be due and payable in full upon the earliest of (a) December 31, 2010, (b) the date on which payment of the Obligations is accelerated by Lender as provided in §10 of the Financing Agreement, and (c) September 30, 2010, in the event that the Final Order shall not have been entered on or before such date; (iii) be used to fund operations through the sale date; (iv) be secured by a first (priming) lien upon all assets of the Debtors' estates, excluding bankruptcy causes of action or the proceeds or recoveries thereof; and (v) any deficiency would be treated as a super-priority administrative expense; however, the super-priority administrative

expense status would be subject and subordinate to the payment (a) of the fees specified in 28 U.S.C. § 1930, and (b) a carve out (the "Carve Out") in an amount not to exceed $100,000.00 ($75,000 for the Debtors' professionals and $25,000 for the professionals for any official committee) for the payment of allowed but unpaid fees of such professionals approved by the Court pursuant to sections 327 or 328 of the Bankruptcy Code in the event of a default under the DIP Financing Agreement and/or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code.

7.     As set forth in the Debtors' schedules, the following parties are listed as secured creditors (the "Existing Secured Creditors"):

a.     Balboa Capital/Bank of America Leasing, capital lease/secured credit transaction, approximately $49,000 secured by certain equipment owned by HPC.

b.     GE Commercial Finance, capital lease/secured credit transaction, approximately $25,000 secured by certain equipment owned by HPC.

c.     GE Commercial Finance, capital lease/secured credit transaction, approximately $10,600 secured by certain equipment owned by HPC.

d.     Huntington National Bank, capital lease/secured credit transaction, approximately $77,800 secured by certain equipment owned by HPC.

e.     Key Equipment Leasing, capital lease/secured credit transaction, approximately $98,400 secured by certain equipment owned by HPC.

f.     Royal Bank of America, capital lease/secured credit transaction, approximately $62,300 secured by certain equipment owned by HPC.

g.     Michael Novakovic, approximately $182,100 secured by lien upon certain equipment owned by MCC, Inc.

h.     Fort Ashford Funds, LLC, approximately $140,000 secured by blanket lien upon all assets of all the Debtors, subject to pre-existing liens.

8.     The Debtors propose that the Existing Secured Creditors be provided a lien (the "Adequate Protection Lien") upon all assets of the Debtors' estates, excluding only Bankruptcy Causes of Action or the proceeds thereof, which lien shall be junior to all existing liens and to the rights of Lender to repayment of the Post-petition Obligations, as adequate protection for the effect of the priming lien granted to the Lender.

Based on the foregoing findings, the Court concludes that an order granting interim relief followed by a hearing at a future date (which may be a final hearing) would not prejudice the rights of creditors in this proceeding, and the use of such funds is necessary to continue operations without interruption and preserve the value of the estates for creditors.

Now therefore, it is hereby Ordered as follows:

1.	The Motion is granted on an interim basis, and the Debtors are authorized to obtain post-petition financing from the Lender and cash advances in an amount up to but not exceeding $50,000 pending further hearing, which amount shall be advanced by the Lender after execution of conforming loan documents and upon request of the Debtors from time to time, and for the sole purpose of the disbursements as shown in the budget attached hereto as **Exhibit A-2** (the "Financing Budget"). The Debtors shall not repay any amounts advanced by the Lender absent further order of this Court after notice and hearing.

2.	The Lender shall have a first (priming) lien on all property of the Debtors and the proceeds thereof, whether acquired pre-petition or post-petition (collectively, the "Post-petition Financing Collateral"), as permitted under Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, to secure the Post-petition Indebtedness; provided however, the Post-petition Financing Collateral shall not include avoidance actions of the Debtors' estates arising under sections 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, and all proceeds thereof (other than proceeds of actions arising under section 549 with respect to transfers of assets which constitute Post-petition Financing Collateral, which such proceeds shall remain subject to liens in favor of the Lender).

3.	To the extent the Post-petition Financing Collateral is insufficient to satisfy the Post-petition Indebtedness, the Lender shall have a superpriority administrative expense claim pursuant to Sections 364(c)(1) and 507(b) of the Bankruptcy Code, subject and subordinate to the payment (a) of the fees specified in 28 U.S.C. § 1930, and (b) a carve out (the "Carve Out") in an amount not to exceed $100,000.00 ($75,000 for the Debtors' professionals and $25,000 for the professionals for any official committee) for the payment of allowed but unpaid fees of such professionals approved by the Court pursuant to sections 327 or 328 of the Bankruptcy Code in the event of a default under the DIP Financing Agreement and/or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code.

4.	The Existing Secured Creditors shall have a lien upon all assets of the Debtors' estates, excluding only Bankruptcy Causes of Action or the proceeds thereof, which lien shall be junior to all existing liens and to the rights of Lender to repayment of the Post-petition Obligations, as adequate protection for the effect of the priming lien granted to the Lender.

5. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-Petition Financing Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation. At the request of the Lender, the Debtors are authorized and directed to execute and deliver such loan documents, financing statements or other instruments or documents reasonably considered by the Lender to be necessary or desirable to further evidence the indebtedness and the perfection of liens and security interest herein granted, without further notice, hearing, or order.

6. The Debtors will provide a monthly report of budgeted as compared to actual receipts and disbursements to the Lender and the Bankruptcy Administrator, within ten days following the end of each month, and shall provide the Lender with such other financial reports as are set forth in the Financing Agreement.

7. The obligation to provide such post-petition financing shall terminate, and the outstanding balance of any such financing advanced shall be due and payable in full upon the earlier of (i) December 31, 2010, (ii) the date on which payment of the Post-petition Indebtedness is accelerated by Lender as provided in Section 10 of the Post-petition Financing Agreement, or (iii) September 30, 2010, in the event that the Final Order approving the Post-petition Financing has not been entered on or before such date.

8. The terms of this Interim Order shall be binding upon any official committee and any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code.

9. Notwithstanding the foregoing, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing; provided however, that based on the findings set forth in this Interim Order and the reliance of the Lender in good faith on the terms thereof, (i) if any of the provisions of this Interim Order are hereafter modified, vacated or stayed by an order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, security interest or priority authorized for the benefit of the Lender that is granted or attaches prior to the effective date of such stay, modification or vacation and (ii) any financing provided by the Lender to the Debtors pursuant to this Interim Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the

original provisions of this Interim Order. Upon the entry and effect of any stay, modification or vacation of this Interim Order, the Debtor's ability to obtain post-petition financing hereunder shall be deemed immediately terminated without further order of the Court.

      10.    A further hearing (which may be a final hearing) on this Motion will be held at _____ o'clock p.m. on _____, 2010, in the U.S. Bankruptcy Court, Courtroom #__, 101 S. Edgeworth St., Greensboro, N.C., at which time the Court will further consider the Motion.

POST-PETITION FINANCING AGREEMENT

among

NCOAT, INC.

NTECH, INC.

MCC, INC.

HIGH PERFORMANCE COATINGS, INC.

as Borrower

and

FORT ASHFORD FUNDS, LLC

as Lender

August __, 2010



# POST-PETITION FINANCING AGREEMENT

This **POST-PETITION FINANCING AGREEMENT** (this "Agreement") is made as of August __, 2010, by and among nCoat, Inc., a Delaware corporation ("nCoat"), nTech, Inc., a Delaware corporation ("nTech") MCC, Inc., a Pennsylvania corporation ("MCC") and High Performance Coatings, Inc., an Oklahoma corporation ("HPC") (nCoat, nTech, MCC and HPC are sometimes collectively referred to herein as "Borrower"), and Fort Ashford Funds, LLC, a California limited liability company ("Fort Ashford" or "Lender").

## BACKGROUND

On August 16, 2010, Borrower filed a petition under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Middle District of North Carolina (the "Bankruptcy Court"). Borrower has requested the Lender to provide short term financing by making available to Borrower a credit facility, not to exceed $200,000, as more fully described herein in order to provide working capital to Borrower and to facilitate the sale of certain assets of Borrower pursuant to the Asset Purchase Agreement between Borrower and Lender dated August 13, 2010. Subject to the terms and conditions set forth herein, the Lender has agreed to provide such financing.

§1   **Definitions**:  Certain capitalized terms are defined below:

Accounts:  All rights of Borrower to any payment of money for goods sold, leased or otherwise marketed or services performed whether evidenced by or under or in respect of a contract or instrument, and to all proceeds in respect thereof.

Agreement:  See preamble, which term shall include this Agreement as amended and in effect from time to time.

Asset Purchase Agreement:  The Asset Purchase Agreement dated August __, 2010 between Borrower and Lender, as amended and from time to time in effect.

Bankruptcy Code:  Title 11, United States Code.

Bankruptcy Court:  The United States Bankruptcy Court for the Middle District of North Carolina or such other court having jurisdiction over the Case.

Base Rate:  See §2.2.

Borrower:  See preamble, which term shall include each Borrower as debtor and debtor in possession as contemplated by this Agreement.

Budget:  The budget of anticipated cash receipts and disbursements for Borrower attached hereto as Exhibit B.

-1-

**Business Day:** Any day on which banks in New York, New York, are open for business generally.

**Carveout:** To the extent not otherwise paid from the proceeds of the Asset Purchase Agreement or the other assets of the Borrower, allowance for the allowed but unpaid fees of such professionals approved by the Court pursuant to Sections 327 or 328 of the Bankruptcy Code in an amount not to exceed $100,000 in the aggregate, or to exceed individually $75,000.00 for counsel for Borrower or $25,000.00 for the professionals of any official committee in the Bankruptcy Case.

**Case:** Borrower's pending case under chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court.

**Charter Documents:** In respect of any entity, the certificate or articles of incorporation or organization and the by-laws of such entity, partnership agreement or other constitutive documents of such entity.

**Commitment:** The obligation of the Lender to advance loans to Borrower up to an aggregate outstanding principal amount not to exceed $200,000.

**Consent:** In respect of any person or entity, any permit, license or exemption from, approval, consent of, registration or filing with any local, state or federal governmental or regulatory agency or authority, required under applicable law.

**Default:** An event or act which, with the giving of notice and/or the lapse of time, would become an Event of Default.

**Disbursement Date:** Any date on which amounts of the loan are disbursed pursuant to §2.

**Disbursement Request:** See §2.1(c).

**Environmental Laws:** All laws pertaining to environmental matters, including without limitation, the Resource Conservation and Recovery Act, the Comprehensive Environmental Response Compensation and Liability Act of 1980, the Superfund Amendments and Reauthorization Acts of 1986, the Federal Clean Water Act, the Federal Clean Air Act, the Federal Oil Pollution Act, the Toxic Substances Control Act, in each case as amended, and all rules, regulations, judgments, decrees, orders and licenses arising under all such laws.

**ERISA:** The Employee Retirement Income Security Act of 1974, as amended, and all rules, regulations, judgments, decrees, and order arising thereunder.

**Event of Default:** Any of the events listed in §10.

**Final Order:** See §8(a)(iv).

Case 10-11512    Doc 14    Filed 08/16/10    Page 13 of 44

**Financials:** For any person or entity in respect of any period, the consolidated and consolidating balance sheet of such person or entity and its Subsidiaries as at the end of such period, and the related consolidated and consolidating statement of income and consolidated and consolidating statement of cash flow of such person or entity for such period, each setting forth in comparative form the figures for the previous comparable fiscal period, all in reasonable detail and prepared in accordance with GAAP.

**Financing Documents:** This Agreement, the Note, and the Security Documents, in each case as from time to time amended or supplemented, and all of the instruments, agreements and documents executed in connection herewith and therewith.

**First Priority DIP Collateral:** See §6(b).

**GAAP:** Generally accepted accounting principles consistent with those adopted by the Financial Accounting Standards Board and its predecessor, as in effect from time to time, consistently applied.

**Indebtedness:** In respect of any entity, all obligations, contingent and otherwise, that in accordance with GAAP should be classified as liabilities, including without limitation (a) all debt obligations, (b) all liabilities secured by Liens, (c) all guarantees and (d) all liabilities in respect of bankers' acceptances or letters of credit.

**Intellectual Property.** Any and all intellectual property rights of the Borrower, including, without limitation, all United States and foreign patents, patent applications, invention disclosures, trade secrets, proprietary information including software and computer models used to predict properties of the technology known as catalytic extraction processing, registered and unregistered trademarks and service marks and related applications for registration, copyrights and licenses of any of the foregoing.

**Interim Order:** An order of the Bankruptcy Court in the Case authorizing and approving this Agreement on an interim basis under Section 364(c) & (d) of the Bankruptcy Code and Bankruptcy Rule 4001, in form and substance satisfactory to the Lender and its counsel. The Interim Order shall, among other things, (a) have been entered on such prior notice to parties in interest in the Case as may be satisfactory to Lender and its counsel and approved by the Bankruptcy Court, (b) have authorized extensions of credit, in a principal amount not greater than the aggregate stated principal amount of the Notes and granted the Super-Priority Claim status and Liens described in §6, and shall prohibit the granting of additional Liens on the assets of Borrower, (c) provide that such Liens in favor of the Lender are automatically perfected upon the entry of the Interim Order and also grant to the Lender relief from the automatic stay of Section 362(a) of the Bankruptcy Code to enable the Lender, if it elects to do so in its discretion, to make all filings and recordings and to take all other actions considered necessary or advisable by the Lender to perfect, protect and insure the priority of their Liens upon the Collateral as a matter of nonbankruptcy law, and (d) a finding of "good faith" on behalf of the Lender under Section 364(e) of the Bankruptcy Code.

-3-

<u>Lender</u>: See preamble.

<u>Liens</u>: Any lien, encumbrance. mortgage, pledge, hypothecation, charge, restriction or other security interest of any kind securing any obligation of any entity or person.

<u>Loans</u>: The Obligations evidenced by the Note.

<u>Materially Adverse Effect</u>: Any materially adverse effect on any of the Lender's perfected security interest in the Collateral, the Lender's entitlement pursuant to the Interim Order, the Final Order or the Prior Lienholder Consents to first priority payment of the Obligations from proceeds of the Asset Purchase Agreement or any similar agreement for sale of customers or assets of Borrower, or the financial condition or business operations of Borrower, taken as a whole, or any material impairment of the ability of Borrower to perform its obligations hereunder or under any of the other Financing Documents.

<u>Maturity Date</u>: The date which is the earliest of (a) December 31, 2010, (b) the date on which payment of the Obligations is accelerated by Lender as provided in §10, & (c)September 30, 2010, in the event that the Final Order shall not have been entered on or before such date.

<u>Note</u>: See §2.1(a).

<u>Obligations</u>: All indebtedness, obligations and liabilities of Borrower to the Lender under this Agreement, the Note or any other Financing Document.

<u>Orders</u>: The Interim Order and the Final Order.

<u>Payment Notice Date</u>: See §2.1(d).

<u>Permitted Liens</u>: See §9.2(c).

<u>Permitted Prior Liens</u>: Liens existing as of the Petition Date to the extent valid, perfected and enforceable and as set forth on Exhibit D attached hereto.

<u>Petition Date</u>: August 16, 2010.

<u>Prior Lienholders</u>: See Exhibit D attached hereto.

<u>Proceeds</u>: See §2.1(b).

<u>Reorganization Plan</u>: A plan of reorganization or liquidation in the Case.

<u>Requirement of Law</u>: In respect of any person or entity, any law, treaty. rule, regulation or determination of an arbitrator, court, or other governmental authority, in each case applicable to or binding upon such person or entity or affecting any of its property.

<u>Sale Proceeds</u>: See §2.3.

-4-

<u>Sales Procedures</u>:  The terms and conditions set forth in Exhibit __ to the Motion To (A) Approve Sale Of Substantially All Assets, (B) Establish Related Sale Procedures And Approve Break-up Fee, (C) Transfer Any And All Claims, Liens, Encumbrances And Interests In Sale Assets To Proceeds Of Sale, (D) Approve Form And Manner Of Notice Of Sale, (E) Assume And Assign Certain Leases And Executory Contracts, And (F) Schedule Hearings To Establish Sales Procedures And Confirm Sale (the "Sale Motion").

<u>Scheduled Disbursements</u>:  <u>See</u> §2.1(c).

<u>Security Documents</u>:  All security agreements, pledge agreements, collateral assignments, mortgages, deeds of trust, assignments, financing statements, or other instruments or documents, in form and substance satisfactory to the Lender, which shall grant or confirm to the Lender's security interests in all of the Collateral, subject only to the Carveout.

<u>Subsidiary</u>:  In respect of Borrower, any business entity of which Borrower at any time owns or controls directly or indirectly more than fifty percent (50%) of the outstanding shares of stock or other beneficial interests or having more than fifty percent (50%) of the voting power, regardless of whether such right to vote depends upon the occurrence of a contingency.

<u>Super-Priority Claim</u>:  A claim against Borrower or its estate in the Case which is in accordance with Sections 364(c)(1), an administrative expense claim having priority over (a) any and all allowed administrative expenses, and (b) unsecured claims now existing or hereafter arising including, without limitation, administrative expenses of the kind specified in Section 503(b), 506(c) or 507(b) of the Bankruptcy Code, subject only to the Carveout.

<u>Transaction Expenses</u>:  See §3(b).

§2    **Financing**.

§2.1    **Note**.

(a)    Upon the terms and subject to the conditions of this Agreement, and further subject to the terms of and to any limitations on borrowing or other extensions of credit contained in the Interim Order or the Final Order, whichever is then in effect, the Lender agrees to lend to Borrower, the amount, including the Carveout, if necessary, of up to the aggregate original principal amount of Two Hundred Thousand Dollars ($200,000) which shall be reflected in a promissory note, a form of which is attached as <u>Exhibit A</u> hereto (the "Note").

(b)    The maximum aggregate amount of the Note shall be Two Hundred Thousand Dollars ($200,000) which sums (the "Proceeds") shall be made available to Borrower solely in accordance with the terms of this § 2 for use in accordance with the Budget attached hereto as <u>Exhibit B</u>.

(c)    After the entry of the Interim Order, and provided that the conditions set forth in §8(b) have been met, the Lender shall transfer Proceeds to Borrower in the amounts and

-5-

on the dates set forth in Exhibit C hereto (the "Scheduled Disbursements"). provided. however, that upon written request made by Borrower to Lender (a "Disbursement Request"), Lender may, in its sole discretion. consent to other and additional payments of Proceeds to Borrower for the purpose of meeting unexpected or emergency working capital requirements of Borrower. The Proceeds shall be used solely for the purposes set forth in the Budget, except as agreed in advance in writing by the Lender.

(d) Borrower shall notify the Lender in writing or telephonically, not later than 12:00 noon New York time on the Business Day (the "Payment Notice Date") which precedes the Disbursement Date (both the Payment Notice Date and the Disbursement Date must be Business Days) of the amount of the disbursement being requested, (a "Disbursement Request"). Subject to the foregoing, so long as the Maturity Date has not occurred and the conditions set forth in §8(b) have been met (and upon consent the Lender in the case of Disbursement Requests other than for Scheduled Disbursements), the Lender shall disburse the amount requested by transferring such amount to Borrower in immediately available funds not later than the close of business on such Disbursement Date.

§2.2    **Interest**.  So long as no Event of Default has occurred and is continuing, Borrower shall pay interest on the outstanding principal amount of the Note, and on any other amounts payable under the Financing Documents at a rate per annum which is equal to ten percent (10%) per annum (the "Base Rate"), such interest to be payable (i) in connection with mandatory prepayments. and (ii) on the Maturity Date. While an Event of Default is continuing. amounts payable under any of the Financing Documents, including, without limitation, the Note shall bear interest (compounded monthly and payable on demand in respect of overdue amounts) at a rate per annum which is equal to the sum of (i) Base Rate, plus (ii) four percent (4%) per annum until such amount is paid in full (after as well as before judgment) or (as the case may be) such Event of Default has been cured or waived in writing by the Lender. All computations of interest shall be made by the Lenders on the basis of actual days elapsed and on a 360-day year.

§2.3    **Origination Fee**.  [Intentionally omitted].

§2.4    **Repayments and Prepayments**.

Borrower hereby agrees to pay the Lender on the Maturity Date the entire unpaid principal of and interest on all Obligations, including, without limitation. all Obligations due and payable under the Note. Borrower may prepay the outstanding principal under the Note at any time without premium or penalty.

§3    **Transaction and Monitoring Fees and Expenses**.

(a) Whether or not the transactions contemplated hereby are consummated, Borrower agrees to pay to Lender at earlier of the Maturity Date or as provided in Section 4(a)(i) all costs and expenses (including any taxes, legal. appraisal, environmental consulting, accounting and other professional fees) incurred by the Lender in connection with the preparation. negotiation. execution. amendment. administration or enforcement of any of the

-6-

Obligations or the Financing Documents, including, without limitation, the Note, and the Orders, the obtaining of perfection, protection or priority of any Liens upon any of the Collateral, the review of court papers or proceedings in the Case or any Bankruptcy Court or other court appearances related to this Agreement in connection with any of the foregoing ("Transaction Expenses"). Transaction Expenses shall include attorneys' fees and costs of Nicholls & Crampton, P.A. as counsel to the Lender.

        (b)     Borrower agrees to pay to Lender at earlier of the Maturity Date or as provided in Section 4(a)(i) all reasonable costs and expenses associated with the Lender (should it elect to do so) having a representative or agent monitor the operational and sales performance of the Borrower, subject to approval by the Court. Such monitoring may include the services of one or more professionals and may include up to two (2) business days of monitoring time each week.

§4     **Mandatory Prepayments; Enforcement.**

        (a)     Borrower shall prepay the Obligations upon receipt of any payments pursuant to the Asset Purchase Agreement, or any similar agreements for sale of all or substantially all assets of Borrower approved by the Bankruptcy Court. Any voluntary or mandatory prepayment or proceeds received upon liquidation of Collateral or enforcement of the Lender's rights hereunder shall be applied to the Obligations in the following order:

            (i)     to the payment of Transaction Expenses as to which demand has been made to Borrower for payment, in accordance with the wire instructions for payment included in such demand; and

            (ii)     to the Lender to be applied first, to accrued interest, and, second, to principal and other Obligations until the obligations under the Note, including accrued and unpaid interest, and all other Obligations have been paid in full.

        (b)     Provided that no Event of Default has occurred and is continuing, the Lender may, in its sole discretion, waive the requirement for mandatory prepayments hereunder and permit such amount to be used by Borrower in accordance with the Budget.

        (c)     All payments to be made by Borrower hereunder or under any of the other Financing Documents shall be made in U.S. dollars in immediately available funds in accordance with wire instructions provided by Lender at Borrower's request, without setoff or counterclaim and without any withholding or deduction whatsoever. If any payment hereunder is required to be made on a day which is not a Business Day, it shall be paid on the immediately succeeding Business Day, with interest and any applicable fees adjusted accordingly.

§5     **Loan Administration** [Intentionally omitted].

§6    **Priority, Liens and Guaranty**.

(a)    **Super-Priority Claims and Collateral Security**.  Borrower hereby represents, warrants and covenants that, upon entry of the Interim Order or the Final Order, whichever first occurs, (i) the Obligations shall at all times constitute a Super-Priority Claim having first priority, pursuant to Section 364(c)(1), subject only to the Carveout, and (ii) pursuant to Section 364(c)(2) and (d) of the Bankruptcy Code and the Security Documents, the Obligations shall at all times be secured by a perfected, first priority Lien, upon the First Priority DIP Collateral.  So long as no Event of Default shall have occurred and be continuing, Borrower shall be permitted to pay, as and when the same become due and payable, administrative expenses of the kind specified in 11 U.S.C. §503(b) incurred in the ordinary course of business of Borrower or otherwise approved by the Bankruptcy Court after notice and hearing, and compensation and reimbursement expenses allowed and payable under 11 U.S.C. §330 and 11 U.S.C. §331, including periodic payments on account thereof as permitted by the Bankruptcy Court; in each case to the extent that such payment is otherwise not prohibited by any of the terms of this Agreement.  Borrower agrees that the Lender shall have the right to contest the amount of such expenses.

(b)    **Grant of Security Interest**.  Borrower hereby grants to the Lender, to secure the payment and performance in full of all Obligations, a security interest in and pledges and assigns to the Lenders all of the following properties, assets and rights of Borrower, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof, (collectively, the "First Priority DIP Collateral"):

(i)    any and all assets of Borrower now owned or hereinafter acquired, including, without limitation, all accounts, notes, chattel paper, certificates of title, instruments, inventory, general intangibles, fixtures, furniture, furnishings, machinery, equipment, supplies, building materials, appliances, improvements and all goods of any and every nature whatsoever now or in the future owned by Borrower.  The Collateral includes, without limitation, any and all intellectual property and technology rights owned or utilized by the Borrower, including all blending and compounding processes. The Collateral also includes any and all trade names utilized by the Borrower, including, without limitation, the trade names "Jet-Hot", "HPC", "nCoat", "High Performance Coatings", "nPowered" or "Sterling";

(ii)    any and all rights or interests of the Borrower under the Asset Purchase Agreement; and

(iii)    all proceeds, products, replacements, additions, substitutions, renewals, and accessions of any of the foregoing.

(c)    **Collateral Security Perfection**.  The Borrower agrees that the Lender shall be perfected in the First Priority DIP Collateral immediately upon the entry of the Interim Order without any further action by Lender.  Notwithstanding this, Borrower agrees to take all action that the Lender may reasonably request as a matter of nonbankruptcy law to perfect and

-8-

protect the Lender's Liens upon the Collateral and for such Liens to obtain the priority therefor contemplated hereby. including, without limitation, executing and delivering such financing statements. providing such notices and assents of third parties. obtaining such governmental approvals and providing such other instruments and documents in recordable form as the Lender may reasonably request. provided, however. that the failure to provide documentation and other arrangements to perfect the Lender's interests in the Intellectual Property shall not affect the validity and perfection of the Lender's Liens upon the Collateral as provided in the Interim Order and the Final Order. Borrower agrees that financing statements executed hereunder shall be sufficient notwithstanding that the collateral description contained therein refers to "all assets" of Borrower or similar language.

(d) **No Discharge; Survival of Claims**. Borrower agrees that (i) the Obligations shall not be discharged by the entry of an order confirming a Reorganization Plan (and Borrower pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge). (ii) the Super-Priority Claim granted to the Lender pursuant to the Orders and the Liens granted to the Lender pursuant to the Orders and the Security Documents shall not be affected in any manner by the entry of an order confirming a Reorganization Plan, (iii) Borrower shall not enter into a credit facility pursuant to which a lender, other than the Lender, is granted a priority or secured claim pursuant to §364 of the Bankruptcy Code. except simultaneously with payment in full of the Obligations, and (iv) Borrower shall not propose or support any Reorganization Plan that is not conditioned upon the termination of the Lender's Commitments hereunder. payment in full in cash, on or prior to the earlier to occur of (A) the effective date of such Reorganization Plan and (B) sixty (60) days following the confirmation date of such Reorganization Plan. of all of the Obligations and which does not provide with respect to Obligations arising pursuant to §13 after such date or other Termination Date. thereafter for the payment in full of such Obligations in cash when due and payable.

§7 **Representations and Warranties**. Borrower represents and warrants to the Lender on the date hereof and on the date of any Disbursement Request.

(a) Borrower. and each of them, is duly organized. validly existing, and in good standing under the laws of its jurisdiction of incorporation and is duly qualified in every other jurisdiction where it is doing business and where failure to qualify would have a Materially Adverse Effect, and subject to approval by the Bankruptcy Court the execution, delivery and performance by Borrower of each of the Financing Documents (i) are within its corporate authority, (ii) have been duly authorized by all necessary corporate action, and (iii) do not conflict with or contravene its Charter Documents.

(b) Upon entry of the Interim Order or the Final Order. whichever occurs first, and the execution and delivery of the Financing Documents by the respective parties thereto, each Financing Document shall constitute the legal. valid and binding obligation of Borrower.

(c) Borrower has good and marketable title to all its material properties. subject only to Permitted Prior Liens. and possesses all assets. including intellectual properties.

-9-

franchises and Consents, adequate for the conduct of its business as now conducted, without known conflict with any rights of others. Borrower maintains insurance from financially responsible insurers covering such risks and in such amounts and with such deductibles as are customary in the Borrower's businesses and are adequate to protect the First Priority DIP Collateral.

(d)     Borrower has provided to the Lender their audited Financials as at December 31, 2007, and for the fiscal year then ended, their unaudited but reviewed Financials as at September 30, 2008, and internal Financials the end of and for each fiscal month thereafter through May 31, 2010. Such Financials are complete and correct and fairly present the position of the Borrowers as at such dates and for such periods in accordance with GAAP consistently applied (except that unaudited Financials are subject to year-end audit adjustments and do not contain footnote disclosures required by GAAP).

(e)     Except for the commencement of the Case or as set forth on Schedule 7(e), there are no legal or other proceedings or investigations pending or to Borrower's knowledge threatened against Borrower before any court, tribunal or regulatory or legislative authority. Borrower has paid all post-petition taxes as are due and payable (except those being contested in good faith by appropriate proceedings and for which adequate reserves have been taken) and have funded all post-petition (and to the extent permitted by the Bankruptcy Court, all pre-petition) employee payrolls (including all required withholdings) on a periodic basis in the ordinary course of their businesses and as required by law.

(f)     Except for entry of the Interim Order or the Final Order, whichever occurs first, the execution, delivery, performance of its obligations, and exercise of its rights under the Financing Documents by Borrower, including borrowing under this Agreement, (i) do not require any Consents which have not been obtained; and (ii) are not and will not be in conflict with or prohibited or prevented by (A) any Requirement of Law, or (B) any Charter Document, corporate minute or resolution, or any provision of any post-petition instrument, post-petition agreement or assumed executory contract, in each case binding on it or affecting the property of Borrower.

(g)     Borrower is not in violation of (A) any Charter Document, corporate minute or resolution, (B) any post-petition instrument, post-petition agreement or assumed executory contract, in each case binding on it or affecting its property, which violation could have a Materially Adverse Effect, or (C) any Requirement of Law, in a manner which could have a Materially Adverse Effect, including, without limitation, all applicable federal and state tax laws, ERISA and Environmental Laws. Borrower is not a party to a collective bargaining agreement.

(h)     Upon execution and delivery of this Agreement and the other Financing Documents and entry of the Interim Order or Final Order, whichever occurs first, the Lender shall have first-priority, fully perfected Liens in the First Priority DIP Collateral, subject only to the Carveout with no financing statements, mortgages or similar filings on record anywhere

-10-

which conflict with such first-priority Liens after taking into account the provisions of the Interim Order or the Final Order, whichever is then in effect.

(i)     There are no Liens on any assets of Borrower other than Permitted Prior Liens.

(j)     All of the Subsidiaries of Borrower are set forth on Schedule 7(j). Except as set forth in Schedule 7(j). Borrowers is not a party to any partnership or joint venture.

(k)     Except as specifically disclosed in Schedule 7(k), there is no non-compliance with any Environmental Laws nor any liability under any Environmental Laws that could, individually or in the aggregate, reasonably be expected to have a Materially Adverse Effect. To the Borrower's knowledge, except as specifically disclosed in Schedule 7(k), no hazardous material the release of which is restricted under Environmental Laws has been disposed of or released or otherwise exists, on, or under or onto any real property owned or operated by Borrower in quantities requiring reporting or remediation under applicable Environmental Laws.

(l)     Borrower owns or is licensed or otherwise has the right to use all Intellectual Property that is reasonably necessary for the operation of its businesses as presently conducted, without infringement upon the rights of any other person. Borrower holds all material state and federal governmental permits and approvals necessary for the operation of its businesses as presently conducted, which permits and approvals are in full force and effect.

(m)     Borrower has not received resignations and has no knowledge of any threatened resignation of any employees, which resignations individually or in the aggregate could reasonably be expected to have a Materially Adverse Effect.

§8    **Conditions Precedent.**

(a)     This Agreement and the obligation of Lender to purchase the Note is subject to satisfaction by Borrower or waiver by Lender of the following conditions precedent, in addition to those set forth in §8(b):

(i)     The Note shall have been duly executed and delivered by the respective parties thereto, and all Financing Documents shall be in full force and effect and shall be in form and substance satisfactory to the Lender.

(ii)     All corporate action, third-party consents and governmental approvals necessary for the valid execution, delivery and performances by Borrower of each of the Financing Documents shall have been duly and effectively taken or (as the case may be) obtained and evidence thereof satisfactory to the Lender shall have been provided to the Lender.

-11-

(iii)     To the extent requested by the Lender, all Uniform Commercial Code and title searches shall have been made, all Uniform Commercial Code financing statements or other Liens released or subordinated by Order of the Bankruptcy Court except with respect to Permitted Prior Liens (including without limitation releases of any mortgages over real estate of any of Borrower in favor of any person or entity other than the Lender) and notices and assents shall have been executed and delivered (in recordable form where applicable) to the Lender, all relevant insurances shall have been modified to include the Lender, as assignee, additional insured or loss payee as applicable, all Collateral in which a security interest may be perfected only by the secured party's possession shall, if so requested by the Lender, have been delivered to the Lender or its nominee, and all other actions necessary or in the reasonable opinion of the Lender desirable for the perfection and protection and to achieve the priority, as contemplated hereby, of all Liens in favor of the Lender shall have been taken to the satisfaction of the Lender and its counsel.

(iv)     The Interim Order or the Final Order have been entered, shall be in full force and effect and shall not have been reversed, modified or amended in any respect without the consent of the Lender, provided, that on or before September 30, 2010 the Bankruptcy Court shall enter a final order (the "Final Order") authorizing and approving this Agreement pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001, in form and substance satisfactory to the Lender and its counsel, which Final Order shall be in full force and effect, and shall not have been reversed, modified or amended in any respect without the consent of the Lender. If either the Interim Order or the Final Order is the subject of a pending appeal in any respect, none of such Order, the purchase of the Note, the disbursement of any portion of the Proceeds or the performance by Borrower of any of its obligations under any of the Financing Documents shall be the subject of a stay pending appeal. In accordance with Section 364(e) of the Bankruptcy Code, Borrower and the Lender shall be entitled to rely in good faith upon the Orders notwithstanding objection thereto or appeal therefrom by any interested party. Borrower and the Lender shall be permitted and required to perform their respective obligations in compliance with this Agreement notwithstanding any such objection or appeal unless the relevant Order has been stayed by a court of competent jurisdiction.

(v)     The Asset Purchase Agreement shall be executed and delivered by Borrower and Lender, subject only to Bankruptcy Court approval.

(vi)     The Board of Directors of Borrower shall have authorized Borrower to enter into this Agreement and the Asset Purchase Agreement and related documents.

(vii)     The Sales Procedures shall have been approved by the Bankruptcy Court.

-12-

(b)     The obligation of the Lender to make any disbursement of the Proceeds is subject to the satisfaction by Borrower or waiver by Lender of the following further conditions precedent:

(i)     Each of the representations and warranties of Borrower to the Lender herein or in any of the other Financing Documents or any document, certificate or other paper or notice in connection herewith shall be true and correct in all material respects as of the time made or deemed to have been made or repeated.

(ii)     The Maturity Date shall not have occurred and no Default or Event of Default shall have occurred and be continuing.

(iii)     All documents and certificates in connection with the transactions contemplated hereby shall be in form and substance satisfactory to the Lender, and the Lender shall have received all information as it may have reasonably requested.

§9     **Covenants**.

§9.1     **Affirmative Covenants**.  Borrower agrees that until the payment and satisfaction in full in cash of all of the Obligations, Borrower will comply with its obligations as set forth throughout this Agreement and to:

(a)     furnish the Lender:

(i)     as soon as available copies of all reports or other documents required to be filed with the Office of the United States Bankruptcy Administrator;

(ii)     as soon as available, but in any event within seven (7) Business Days after the end of each fiscal month and quarter, the unaudited consolidated Financials of Borrower for such month and quarter, including a balance sheet, income statement and cash flow statement with comparisons to the previous fiscal month or quarter, but subject to year end adjustments, certified by their chief financial officer or chief accounting officer or treasurer;

(iii)     as soon as available, but in any event within five (5) days after the end of each calendar week, a statement showing actual cash receipts and disbursements for such week compared with cash receipts and disbursements as shown on the Budget;

(iv)     as soon as available, any forecast of the operations of Borrower for any future period, together with variations of actual performance from such previous forecast;

(v)     promptly copies of all pleadings, notices, orders and other papers filed in the Case;

-13-

(vi)     daily sales reports and daily cash receipts and disbursement reports; and

(vii)     from time to time such other information concerning Borrower or the Case as the Lender may reasonably request.

(b)     keep true and accurate books of account in accordance with GAAP, maintain its current fiscal year and permit the Lender or its designated representatives during normal business hours to inspect Borrower's premises and to examine and be advised as to Borrower's business records upon the request of the Lender;

(c)     maintain its corporate existence, business and assets, keep its business and assets adequately insured by responsible insurers, maintain the chief executive office of nCoat, Inc. in the State of North Carolina, continue to engage in the same lines of business, fund its payroll, periodically in the ordinary course of its business consistent with past practices, on a current basis (including all withholdings), pay all post-petition taxes as and when due and payable (except where contested in good faith by appropriate proceedings and for which adequate reserves have been taken) and comply with all other Requirements of Law, including ERISA and Environmental Laws, except where failure to do so will not have a Materially Adverse Effect;

(d)     notify the Lender promptly in writing of (i) the occurrence of any Default or Event of Default, (ii) any noncompliance with or obligation under ERISA or any Environmental Law or proceeding in respect thereof which could have a Materially Adverse Effect, (iii) any change of address, (iv) any pending or, to the knowledge of the Borrower, threatened litigation or similar proceeding affecting Borrower or any material change in any such litigation or proceeding previously reported, where such litigation or proceeding, if determined adversely to Borrower, could have a Materially Adverse Effect, (v) any post-petition claims against any assets or properties of Borrower constituting Collateral and (vi) any testing or environmental site assessments conducted at any real properties of Borrower as a result of a release of hazardous materials or an incident outside of the ordinary course of business of Borrower or an investigation by governmental authorities pursuant to any Environmental Law, together with copies of all laboratories results and consulting reports with respect thereto;

(e)     comply with all of the requirements of Sections 1113 and 1114 of the Bankruptcy Code;

(f)     use the Proceeds solely for working capital purposes and general corporate purposes (including expenditures incurred to comply with Environmental Laws), in the ordinary course of the business of Borrower and to pay Chapter 11 expenses.  The proceeds shall not be used for the carrying of "margin security" or "margin stock" within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224;

(g)     cooperate with the Lender, take such action, execute such documents (including security documents), and provide such information as the Lender may from time to

-14-

time reasonably request in order further to effect the transactions contemplated by and the purposes of the Financing Documents and, if requested by the Lender for regulatory reasons or following the occurrence of an Event of Default, deliver to the Lender at Borrower's expense appraisals, title insurance, surveys or environmental assessments relating to the real estate of Borrower:

(h) notify the Lender prior to rejecting any contract or making any motion to reject any contract, setting forth in such notice the Borrower's reasons why such rejection (i) will be in the best interests of the Borrower and (ii) will not have a Materially Adverse Effect;

(i) conduct all business for the Borrower in the name and for the benefit of Borrower; and

(j) create any receivables for the Borrower in the name and for the benefit of nCoat, Inc.

§9.2 **Negative Covenants**. Borrower agrees that until the payment and satisfaction in full of all the Obligations, Borrower will not:

(a) seek, consent or suffer to exist (i) any modification, stay, vacation or amendment to the Orders; (ii) a priority claim for any administrative expense or unsecured claim against Borrower (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expense of the kind specified in Section 503(b), 506(c) or 507(b) of the Bankruptcy Code) equal or superior to the superpriority claim of the Lender in respect of the Obligations: (iii) a priority claim pursuant to Section 364 of the Bankruptcy Code equal or superior to the superpriority claim of the Lender in respect of the Obligations; and (iv) any Lien on any Collateral, having a priority equal or superior to the Liens in favor of the Lenders in respect of the Obligations:

(b) create, incur or assume any Indebtedness other than (i) Indebtedness to the Lender arising under the Financing Documents, (ii) Indebtedness in respect of the acquisition of property or capitalized leases which does not exceed $10,000 in cumulative aggregate amount and refinancings thereof which do not exceed the amount refinanced, (iii) current liabilities of Borrower not incurred through the borrowing of money or the obtaining of credit except credit on an open account customarily extended, (iv) Indebtedness in respect of taxes or other governmental charges contested in good faith and by appropriate proceedings and for which adequate reserves have been taken; and (v) Indebtedness in existence on the Petition Date.

(c) create or incur any Liens on any of the property or assets of Borrower except (collectively, "Permitted Liens") (i) Liens securing the Obligations; (ii) Permitted Prior Liens as listed in the Schedules filed by the Borrower in the Case: (iii) Liens securing taxes or other governmental charges not yet due or contested in good faith and by appropriate proceedings and for which adequate reserves have been taken; (iv) deposits for utilities, reasonable retainers to professionals. deposits or pledges made in connection with workmen's compensation, unemployment insurance or other social security obligations or to secure the

-15-

performance of tenders, bids and other contracts in the ordinary course of business of any of Borrower consistent with past practices; (v) Liens of carriers, warehousemen, mechanics and materialmen and similar non-consensual liens arising by operation of law, less than 120 days old as to obligations not yet due; and (vi) easements, rights-of-way, zoning restrictions and similar minor Liens which individually and in the aggregate do not have a Materially Adverse Effect; (vii) purchase money security interests in or purchase money mortgages on real or personal property securing purchase money Indebtedness or capitalized leases permitted by Section 9.2(b)(ii), covering only the property so acquired or leased and (viii) deposits to obtain goods or services and not exceeding $10,000 in the aggregate at any one time outstanding;

(d)     purchase securities, make loans, issue guaranties or other financial accommodations or to make any other investments other than investments in operating bank accounts, bank certificates of deposit, bank eurodollar deposits, bank money market funds, government securities, commercial paper, repos and other cash equivalent securities, in each case having maturities of thirty days or less and reasonably acceptable to the Lender;

(e)     effect any disposition of other assets, other than dispositions of inventory in the ordinary course or dispositions as authorized by the Bankruptcy Court after notice and a hearing in compliance with the Bankruptcy Code.

§10     **Events of Default; Acceleration**.  If any of the following events ("Events of Default") shall occur:

(a)     Borrower shall fail to pay when due and payable any principal of the Note, when the same becomes due and payable hereunder, or any interest or other Obligation  due under any of the Financing Documents within three (3) Business Days following the date when the same becomes due and payable thereunder;

(b)     Borrower shall fail to perform any term, covenant or agreement contained in §9.1(d)(i) or (ii), §9.1(f), or §9.2.

(c)     Borrower shall fail to perform any other term, covenant or agreement contained in this Agreement or any of the other Financing Documents after the Lender has given written notice of such failure to Borrower and a period of five (5) Business Days has passed without such failure having been cured or remedied;

(d)     any representation or warranty of Borrower in any of the Financing Documents or in any document, certificate or other paper or notice given in connection therewith shall have been false or misleading in any material respect at any time made or deemed to have been made or repeated;

(e)     Borrower shall be in default under any agreement or agreements (other than the Financing Documents) evidencing post-petition Indebtedness, or Borrower shall otherwise fail to pay such Indebtedness referred to in this clause (e) when due or within any applicable period of grace;

-16-

(f)      any of the Financing Documents executed and delivered shall cease to be in full force and effect. or the Lender's Liens on substantially all of the Collateral shall fail to be perfected at any time following the later to occur of the date hereof or the entry of the Interim Order or the Final Order. whichever shall be entered first, or shall fail to have the priority contemplated hereby at any time after such date;

(g)      the Bankruptcy Court shall enter any order (i) amending. supplementing, altering. staying, vacating, rescinding or otherwise modifying any Order without the consent of the Lender. (ii) appointing a chapter 11 trustee or appointing an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) in the Case; (iii) dismissing the Case or converting the Case to a chapter 7 case. (iv) granting relief from the automatic stay to any creditor holding or asserting a Lien or reclamation claim where the deprivation of Borrower of such assets will, in the reasonable opinion of the Lender. have a Materially Adverse Effect, or (v) terminating Borrower's exclusive right to file or solicit a plan under Section 1121 of the Bankruptcy Code;

(h)      an application shall be filed by Borrower or any other interested party for the approval of any other Super-Priority Claim in the Case which is pari passu with or senior to the claims of the Lenders against Borrower hereunder or under any of the other Financing Documents (unless after giving effect to the transactions contemplated by such application. all Obligations (whether contingent or otherwise) shall be paid in full in cash). or there shall arise any such Super-Priority Claim;

(i)      Borrower shall be unable to pay its post-petition debts as they mature:

(j)      there shall remain undischarged for more than thirty (30) days any final post-petition judgment or execution action against Borrower, or relief from the automatic stay of Section 362(a) of the Bankruptcy Code shall be granted to any creditor or creditors of Borrower, where the deprivation of Borrower of such assets will. in the reasonable opinion of the Lender. have a Materially Adverse Effect;

(k)      Borrower shall pay or discharge any pre-petition Indebtedness, exclusive of (i) Indebtedness required to be paid and in fact paid in connection with the assumption of executory contracts which are not financial accommodations, (ii) payments effected by involuntary set-offs and (iii) wages. salaries. fringe, health or medical benefits and employee 401k withholding in amounts not to exceed the amounts allocated to such costs in the Budget:

(l)      a disclosure statement shall be approved by the Bankruptcy Court in the Case for a Reorganization Plan which does not satisfy the requirements of §6(d);

(m)      Borrower shall be enjoined from conducting any part of its business as a debtor in possession. or there shall occur any disruption to such business. which could have a Materially Adverse Effect;

(n)      the Asset Purchase Agreement shall be terminated;

-17-

(o)     a motion seeking Bankruptcy Court approval of the Asset Purchase Agreement and the Sales Procedures shall not be filed on or before August 18, 2010 or thereafter shall be materially modified or withdrawn; or an order approving the Asset Purchase Agreement and the Sales Procedures shall not have been entered on or before August 30, 2010, which order shall not have subsequently been modified, stayed, withdrawn, appealed or reversed; or

(p)     the order or orders satisfying the requirements of Section 8(a)(v) hereof shall be subsequently modified, stayed, withdrawn, appealed or reversed.

THEN, or at any time thereafter the Lender may, by written notice (an "Acceleration Notice") to Borrower (and to the Bankruptcy Court to the extent required by the Orders), declare and require (i) that the Lender's Commitments are immediately terminated, (ii) the unpaid principal amount of the Loan and all interest accrued and unpaid thereon forthwith to be due and payable, and (iii) all other amounts payable hereunder and under the other Financing Documents to be forthwith due and payable, in each case without further order of or application to the Bankruptcy Court, presentment, demand, protest or further notice of any kind all of which are hereby expressly waived by Borrower. Provided, further, in the case of an Event of Default under Sections 10(n) (o) or (p), the Lender may terminate its Commitment hereunder.

If an Event of Default occurs, the Lender may, subject to the provisions of the Orders and after first obtaining relief from the automatic stay after notice and hearing, exercise the rights and remedies which the Lender may have hereunder or under any of the other Financing Documents or at law (including but not limited to the Bankruptcy Code and the Uniform Commercial Code) or in equity or otherwise. No remedy herein conferred upon the Lender is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and in addition to every other remedy hereunder, now or hereafter existing at law or in equity or otherwise.

§11     **SETOFF AND OTHER REMEDIES. IF AN EVENT OF DEFAULT EXISTS, REGARDLESS OF THE ADEQUACY OF ANY COLLATERAL FOR ANY OF THE OBLIGATIONS, ANY POST-PETITION SUMS CREDITED BY OR DUE FROM THE LENDER TO BORROWER MAY BE APPLIED TO OR SET-OFF AGAINST ANY POST-PETITION PRINCIPAL, INTEREST, FEES AND ANY OTHER AMOUNTS DUE FROM THE BORROWER TO THE LENDERS AT ANY TIME WITHOUT FURTHER ORDER OF OR APPLICATION TO THE BANKRUPTCY COURT, NOTICE TO BORROWER, OR COMPLIANCE WITH ANY OTHER PROCEDURE IMPOSED BY STATUTE OR OTHERWISE, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED BY BORROWER.**

§12     **Lender as a Party in Interest**. Borrower hereby stipulates and agrees that the Lender is and shall remain a party in interest in the Case and shall have the right to participate, object and be heard in any motion or proceeding in connection therewith and to appeal therefrom. Neither the failure to so participate, object or be heard nor anything in this Agreement or any other Financing Documents shall be deemed to be a waiver of the Lender's rights or remedies thereunder or under applicable law. Without limitation of the foregoing, the

-18-

Lender shall have the right to make any motion or raise any objection which it deems to be in its interest (specifically including but not limited to objections to use of proceeds of the purchase of the Note. payment of professional fees and expenses or the amount thereof, sales or other transactions outside the ordinary course of business or assumption or rejection of any executory contract or lease) whether or not the action or inaction by Borrower which is the subject of such motion or objection violates or is expressly permitted by any covenant or provisions of this Agreement or any other Financing Document.

§13  **Miscellaneous**.

(a)    Borrower agrees to indemnify and hold harmless the Lender and its officers, employees, affiliates, agents. attorneys and controlling persons (collectively, the "Indemnified Persons") from and against any and all losses, claims, damages and liabilities to which any such Indemnified Person may be subject arising out of or in connection with this Agreement and the other Financing Documents or any the transactions contemplated hereby or thereby or any claim, litigation, investigation or proceeding relating to any of the foregoing. whether or not such Indemnified Person is a party hereto or thereto. and to reimburse each of such Indemnified Persons, from time to time upon its, his or her demand, for any reasonable legal or other expenses incurred in connection with investigating or defending any of the foregoing, whether or not the transactions contemplated hereby are consummated; provided, however, that the foregoing indemnity will not, as to any Indemnified Person, apply to losses, claims, damages, liabilities or related expenses to the extent that they have been determined by a court of competent jurisdiction by final order to arise from the bad faith. willful misconduct or gross negligence of such Indemnified Person.  In litigation. or the preparation therefor, the Indemnified Persons will be entitled to select their own counsel and. in addition to the foregoing indemnity. Borrower agrees to pay promptly the reasonable fees and expenses of such counsel, provided that, such Indemnified Party shall reimburse Borrower for such amounts paid for counsel if such amounts were incurred by an Indemnified Person in a litigation in which Borrower is determined by a final order of a court of competent jurisdiction not to be obligated to indemnify such Indemnified Person hereunder.

(b)    Borrower. for itself and on behalf of any Chapter 11 or Chapter 7 trustee or estate representative hereby waives and releases the Lender and any claim against Collateral securing the Obligations pursuant to Section 506(c) of the Bankruptcy Code.

(c)    Any communication to be made hereunder shall (i) be made in writing. but unless otherwise stated. may be made by telex. email, facsimile transmission or letter, and (ii) be made or delivered to the address of the party receiving notice which is identified with its signature below (unless such party has by five (5) days' written notice specified another address). and shall be deemed made or delivered, when dispatched. left at that address, or five (5) days after being mailed. postage prepaid. to such address.

(d)    This Agreement shall be binding upon and inure to the benefit of each party hereto and its successors and assigns, but Borrowers may not assign its rights or obligations

-19-

hereunder. In addition, this Agreement shall be binding in any Chapter 7 Trustee appointed in the Bankruptcy Case. The Lender may assign any of the Obligations, including, without limitations, the Note, or any participation therein, to any entity affiliated with the Lender or its principals.

(e)     This Agreement may not be amended or waived except by a written instrument signed by the Borrower and the Lender, and any such amendment or waiver shall be effective only for the specific purpose given. No failure or delay by the Lender to exercise any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other right, power or privilege. The provisions of this Agreement are severable and if any one provision hereof shall be held invalid or unenforceable in whole or in part in any jurisdiction, such invalidity or unenforceability shall affect only such provisions in such jurisdiction. This Agreement, together with all Schedules hereto, expresses the entire understanding of the parties with respect to the transactions contemplated hereby. This Agreement and any amendment hereof may be executed in several counterparts, each of which shall be an original, and all of which shall constitute one agreement. In proving this Agreement, it shall not be necessary to produce more than one such counterpart executed by the party to be charged. **THIS AGREEMENT AND THE NOTE SHALL FOR ALL PURPOSES BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NORTH CAROLINA (EXCLUDING THE LAWS APPLICABLE TO CONFLICTS OR CHOICE OF LAW). BORROWER AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS NOTE MAY BE BROUGHT IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AND CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF SUCH COURT AND TO SERVICE OF PROCESS IN ANY SUCH SUIT BEING MADE UPON BORROWER BY MAIL AT THE ADDRESS SPECIFIED IN §14(b) OF THE FINANCING AGREEMENT. BORROWER HEREBY WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO VENUE OF ANY SUCH SUIT IN ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT COURT. BORROWER, AS AN INDUCEMENT TO THE LENDER TO ENTER INTO THIS AGREEMENT, HEREBY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION ARISING IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER FINANCING DOCUMENT.**

-20-

**IN WITNESS WHEREOF,** the undersigned have duly executed this Agreement as a sealed instrument as of the date first above written.

LENDER:        FORT ASHFORD FUNDS, LLC

By_____
    Name:
    Title:

BORROWER:    NCOAT, INC.

By_____
    Name:
    Title:

NTECH, INC.

By_____
    Name:
    Title:

MCC, INC.

By_____
    Name:
    Title:

HIGH PERFORMANCE COATINGS, INC.

By_____
    Name:
    Title:

-21-

## **PROMISSORY NOTE**

<u>$UP TO 200,000.00</u>                                                                        August __, 2010

      FOR VALUE RECEIVED, the undersigned, jointly and severally (collectively "Borrower"), hereby promise to pay to the order of Fort Ashford Funds, LLC, or its assignee ("Lender").

      (a)     on the Maturity Date the principal amount of Two Hundred Thousand ($200,000.00) or such lesser amount outstanding from time to time pursuant to the Post-Petition Financing Agreement dated as of August ___, 2010 (as amended and in effect from time to time, the "Financing Agreement"), among Borrower and the Lender thereto; and

      (b)     interest on the unpaid principal balance hereof from time to time outstanding from the date hereof until payment in full of the Obligations at the time and at the interest rate provided in the Financing Agreement.

      The Lender shall keep records of the unpaid principal and accrued and unpaid interest under this Note, which records shall be controlling, provided, however, failure to maintain such records shall not prejudice Lender's rights hereunder or under the Financing Agreement. This Note has been issued by Borrower in accordance with the terms of the Financing Agreement. The Lender and any holder hereof is entitled to the benefits of the Financing Agreement, the Security Documents and the other Financing Documents, and may enforce the agreements of Borrower contained therein, and any holder hereof may exercise the respective remedies provided for thereby or otherwise available in respect thereof, all in accordance with the respective terms thereof. All capitalized terms used in this Note and not otherwise defined herein shall have the same meanings herein as in the Financing Agreement.

      If any one or more of the Events of Default shall exist, the entire unpaid principal amount of this Note and all of the unpaid interest accrued thereon may become or be declared due and payable in the manner and with the effect provided in the Financing Agreement.

      No delay or omission on the part of Lender or any holder hereof in exercising any right hereunder shall operate as a waiver of such right or of any other rights of Lender or such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar or waiver of the same or any other right on any further occasion.

      Borrower and every endorser and guarantor of this Note or the obligation represented hereby waives presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note, and assents to any extension or postponement of the time of payment or any other indulgence, to any

-22-

substitution, exchange or release of collateral and to the addition or release of any other party or person primarily or secondarily liable.

THIS NOTE AND THE OBLIGATIONS OF BORROWER HEREUNDER SHALL FOR ALL PURPOSES BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NORTH CAROLINA (EXCLUDING THE LAWS APPLICABLE TO CONFLICTS OR CHOICE OF LAW). BORROWER AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS NOTE MAY BE BROUGHT IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AND CONSENTS TO THE NONEXCLUSIVE EASTERN JURISDICTION OF SUCH COURT AND TO SERVICE OF PROCESS IN ANY SUCH SUIT BEING MADE UPON BORROWER BY MAIL AT THE ADDRESS SPECIFIED IN §14(b) OF THE FINANCING AGREEMENT. BORROWER HEREBY WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO VENUE OF ANY SUCH SUIT IN ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT COURT. BORROWER, AS AN INDUCEMENT TO THE LENDER TO ENTER INTO THIS AGREEMENT, HEREBY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION ARISING IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER FINANCING DOCUMENT.

IN WITNESS WHEREOF, each of the undersigned has caused this Promissory Note to be signed in its name under seal by its duly authorized officer as of the day and year first above written.

BORROWER:     NCOAT, INC.


By_____
    Name:
    Title:


NTECH, INC.


By_____
    Name:
    Title:


MCC, INC.


By_____
    Name:
    Title:


-23-

HIGH PERFORMANCE COATINGS, INC.

By_____
   Name:
   Title:

Exhibit B

[Budget]

-1-

Exhibit C

Scheduled Disbursements

Funding Date                    Disbursement Amount

Total:  $

-1-

Permitted Liens, Permitted Prior Liens and Prior Lienholders

1. Balboa Capital/Bank of America Leasing, capital lease/secured credit transaction, approximately $49,000 secured by certain equipment owned by HPC.
2. GE Commercial Finance, capital lease/secured credit transaction, approximately $25,000 secured by certain equipment owned by HPC.
3. GE Commercial Finance, capital lease/secured credit transaction, approximately $10,600 secured by certain equipment owned by HPC.
4. Huntington National Bank, capital lease/secured credit transaction, approximately $77,800 secured by certain equipment owned by HPC.
5. Key Equipment Leasing, capital lease/secured credit transaction, approximately $98,400 secured by certain equipment owned by HPC.
6. Royal Bank of America, capital lease/secured credit transaction, approximately $62,300 secured by certain equipment owned by HPC.
7. Michael Novakovic, approximately $182,100 secured by lien upon certain equipment owned by MCC, Inc.
8. Fort Ashford Funds, LLC, approximately $140,000 secured by blanket lien upon all assets of all the Debtors, subject to pre-existing liens.

Borrowers' Legal Proceedings or Investigations Pending

-1-

## Borrowers' Subsidiaries

None except that each of nTech, Inc., MCC, Inc. and High Performance Coatings, Inc. is a subsidiary of nCoat, Inc.

Borrowers' Non-Compliance
with Environmental Laws

None.

-1-

| | Week Ending 8/20/2010 | Week Ending 8/27/2010 | Week Ending 9/3/2010 | Week Ending 9/10/2010 | Week Ending 9/17/2010 | Week Ending 9/24/2010 | Week Ending 10/1/2010 | Week Ending 10/8/2010 |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | 8,198.48 | 65,077.54 | 5,658.12 | 21,610.12 | 20,950.12 | 84,450.12 | 44,805.12 | 91,805.12 |
| Cash Incoming | | | | | | | | |
| Deposits Customers | 70,000.00 | 70,000.00 | 80,000.00 | 90,000.00 | 100,000.00 | 125,000.00 | 90,000.00 | 110,000.00 |
| Deposits Credit Cards | 25,000.00 | 30,000.00 | 25,000.00 | 35,000.00 | 25,000.00 | 30,000.00 | 20,000.00 | 25,000.00 |
| Available Cash | 103,198.48 | 165,077.54 | 110,658.12 | 146,610.12 | 145,950.12 | 239,450.12 | 154,805.12 | 226,805.12 |
| Cash Outlay | | | | | | | | |
| Payroll and Taxes | | 109,000.00 | | 120,000.00 | | 123,000.00 | | 123,000.00 |
| Commissions | | 4,203.00 | | 4,660.00 | | | | |
| Purchases | 12,000.00 | 10,000.00 | 10,000.00 | 11,000.00 | 10,000.00 | 15,000.00 | 12,000.00 | 13,000.00 |
| Medical and Dental Insurance | | 31,708.67 | | | | 32,000.00 | | |
| Other Insurance (insurance other than health) | $16,863.76 | 1,507.75 | | 12,000.00 | | 3,500.00 | | |
| Rents | | | 32,478.00 | | | | | 32,478.00 |
| Fed Ex Billings | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Utilities | 1,257.18 | | | | 17,500.00 | | | 10,000.00 |
| Professional Fees | | | | | | 4,875.00 | 25,000.00 | |
| Clerk of Bankruptcy Court | | | 13,270.00 | | | 13,270.00 | | 13,270.00 |
| Lease Payments | | | 5,000.00 | | | | 5,000.00 | |
| Merchan Charges (Credit card fees) | | | 25,300.00 | | | | | |
| Deposits - utilities, etc. | | | | | | | | |
| Plant Upgrades and Maintenance | | | | | 26,000.00 | | 18,000.00 | 15,000.00 |
| HazMat Disposal | | | | | | | | |
| Taxes | | | | 25,000.00 | | | | |
| Appraisal | | | | | | | | |
| Miscellaneous Other | 5,000.00 | | | | 5,000.00 | | | 5,000.00 |
| Total Expenditures | 38,120.94 | 159,419.42 | 89,048.00 | 150,660.00 | 61,500.00 | 194,645.00 | 63,000.00 | 214,748.00 |
| Ending Cash Balance | 65,077.54 | 5,658.12 | 21,610.12 | (4,049.88) | 84,450.12 | 44,805.12 | 91,805.12 | 12,057.12 |
| Pre-Petition Financing | | | | 25,000.00 | | | | |
| DIP Financing | | | | | | | | |
| Ending Cash Balance | 65,077.54 | 5,658.12 | 21,610.12 | 20,950.12 | 84,450.12 | 44,805.12 | 91,805.12 | 12,057.12 |

EXHIBIT

A-2

| | Week Ending 10/15/2010 | Week Ending 10/22/2010 | Week Ending 10/29/2010 | Week Ending 11/5/2010 | Week Ending 11/12/2010 | Week Ending 11/19/2010 | Week Ending 11/26/2010 | Week Ending 12/3/2010 |
|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 12,057.12 | 85,057.12 | 53,627.12 | 105,627.12 | 1,879.12 | 158,879.12 | 113,449.12 | 214,949.12 |
| Cash Incoming | | | | | | | | |
| Deposits Customers | 125,000.00 | 100,000.00 | 85,000.00 | 100,000.00 | 150,000.00 | 150,000.00 | 125,000.00 | 100,000.00 |
| Deposits Credit Cards | 30,000.00 | 35,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 25,000.00 |
| Available Cash | 167,057.12 | 220,057.12 | 168,627.12 | 235,627.12 | 181,879.12 | 338,879.12 | 268,449.12 | 339,949.12 |
| Cash Outlay | | | | | | | | |
| Payroll and Taxes | - | 130,000.00 | - | 140,000.00 | - | 140,000.00 | - | 140,000.00 |
| Commissions | | 4,660.00 | | | | 4,660.00 | | |
| Purchases | 12,000.00 | 12,000.00 | 15,000.00 | 15,000.00 | 10,000.00 | 15,000.00 | 15,000.00 | 10,000.00 |
| Medical and Dental Insurance | | | 32,000.00 | | | | 32,000.00 | |
| Other Insurance (insurance other than health) | 12,000.00 | 3,500.00 | | | | 12,000.00 | 3,500.00 | |
| Rents | | | | 32,478.00 | | | | 32,478.00 |
| Fed Ex Billings | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Utilities | 7,500.00 | | | | 10,000.00 | 7,500.00 | | |
| Professional Fees | 25,000.00 | | | | | 25,000.00 | | |
| Clerk of Bankruptcy Court | | | | 25,000.00 | | | | |
| Lease Payments | | 13,270.00 | | 13,270.00 | | 13,270.00 | | |
| Merchant Charges (Credit card fees) | | | | | | | | |
| Deposits - utilities, etc. | | | | | | | | |
| Plant Upgrades and Maintenance | 22,500.00 | | 8,000.00 | 5,000.00 | | 5,000.00 | | 5,000.00 |
| HazMat Disposal | | | | | | | | |
| Taxes | | | | | | | | |
| Appraisal | | | | | | | | |
| Miscellaneous Other | | | 5,000.00 | | | | | |
| **Total Expenditures** | 82,000.00 | 166,430.00 | 63,000.00 | 233,748.00 | 23,000.00 | 225,430.00 | 53,500.00 | 190,478.00 |
| **Ending Cash Balance** | 85,057.12 | 53,627.12 | 105,627.12 | 1,879.12 | 158,879.12 | 113,449.12 | 214,949.12 | 149,471.12 |
| Pre-Petition Financing | | | | | | | | |
| DIP Financing | | | | | | | | |
| **Ending Cash Balance** | 85,057.12 | 53,627.12 | 105,627.12 | 1,879.12 | 158,879.12 | 113,449.12 | 214,949.12 | 149,471.12 |

Case 10-11512    Doc 14    Filed 08/16/10    Page 43 of 44

Budget draft 2010.08.12

| | Week Ending 12/10/2010 | Week Ending 12/17/2010 | Week Ending 12/24/2010 | Week Ending 12/31/2010 |
|---|---|---|---|---|
| **Beginning Cash Balance** | 149,471.12 | 248,201.12 | 205,741.12 | 306,471.12 |
| Cash Incoming | | | | |
| Deposits Customers | 110,000.00 | 120,000.00 | 150,000.00 | 125,000.00 |
| Deposits Credit Cards | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 |
| Available Cash | 284,471.12 | 393,201.12 | 380,741.12 | 456,471.12 |
| Cash Outlay | | | | |
| Payroll and Taxes | - | 140,000.00 | - | 140,000.00 |
| Commissions | | 4,660.00 | | |
| Purchases | 15,000.00 | 10,000.00 | 15,000.00 | 15,000.00 |
| Medical and Dental Insurance | | | 32,000.00 | |
| Other Insurance (insurance other than health) | | 12,000.00 | 3,500.00 | |
| Rents | | | | |
| Fed Ex Billings | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Utilities | | 10,000.00 | 7,500.00 | |
| Professional Fees | | | | 50,000.00 |
| Clerk of Bankruptcy Court | | | | 6,500.00 |
| Lease Payments | 13,270.00 | | 13,270.00 | |
| Merchant Charges (Credit card fees) | | | | - |
| Deposits - utilities, etc. | - | | | |
| Plant Upgrades and Maintenance | | 7,800.00 | | |
| HazMat Disposal | - | | | - |
| Taxes | | | | |
| Appraisal | | | | |
| Miscellaneous Other | 5,000.00 | | | 5,000.00 |
| Total Expenditures | 36,270.00 | 187,460.00 | 74,270.00 | 219,500.00 |
| **Ending Cash Balance** | 248,201.12 | 205,741.12 | 306,471.12 | 236,971.12 |
| Pre-Petition Financing | | | | |
| DIP Financing | | | | - |
| **Ending Cash Balance** | 248,201.12 | 205,741.12 | 306,471.12 | 236,971.12 |

Case 10-11512   Doc 14   Filed 08/16/10   Page 44 of 44