# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# GREENSBORO DIVISION

| IN THE MATTER OF:<br><br>nCoat, Inc.,<br>nTech, Inc.,<br>MCC, Inc., and<br>High Performance Coatings, Inc.,<br><br>Debtors. | Case No. 10-11512<br>Case No. 10-11513<br>Case No. 10-11514<br>Case No. 10-11515<br><br>Chapter 11 |
|---|---|
| **Motion To (A) Approve Sale Of Substantially All Assets, (B) Establish Related Sale Procedures And Approve Break-up Fee, (C) Transfer Any And All Claims, Liens, Encumbrances And Interests In Sale Assets To Proceeds Of Sale, (D) Approve Form And Manner Of Notice Of Sale, (E) Assume And Assign Certain Leases And Executory Contracts, And (F) Schedule Hearings To Establish Sales Procedures And Confirm Sale** ||

NOW COME nCoat, Inc. ("nCoat"), nTech, Inc. ("nTech"), MCC, Inc. ("MCC") and High Performance Coatings, Inc. ("HPC" and collectively, the "Debtors"), and move the Court pursuant to §§ 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedure as follows:

1.  On August 16, 2010 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code. The Debtors continue in possession of their respective assets and operate their businesses as debtors-in-possession.

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  nCoat is a Delaware corporation. HPC, nTech, and MCC are wholly-owned subsidiaries of nCoat. The Debtors' corporate offices are located in Whitsett, North Carolina, and the Debtors' application operations are conducted at facilities located in Oklahoma City, Oklahoma, Tempe, Arizona, and Whitsett, North Carolina. HPC was acquired by nCoat in September of 2005. In June of 2007, nCoat acquired MCC, which does business under the name of JET HOT® Coatings. At the time of their acquisition, both HPC and MCC were market leaders in the development and application of high performance coatings. In 2006, nTech was formed by nCoat as an intellectual property and development entity. nTech develops and holds

proprietary intellectual property and further licenses coatings facilities at customers' manufacturing plants.

4. The Debtors specialize in nanotechnology research, licensing, and the commercialization, distribution and application of nano-structured as well as multiple non-nano structured surface coatings. The Debtors' specialized coatings are used by the automotive, diesel engine, trucking, recreational vehicle, motorcycle, aerospace and oil and gas industries for heat management, corrosion resistance, friction reduction, bond strength and appearance.

5. Shortly before the Petition Date, the Debtors entered into negotiations with Fort Ashford Funds, LLC ("Fort Ashford"), whereby Fort Ashford (i) loaned $142,500 to the Debtors secured by a blanket lien upon substantially all assets of the Debtors, subject to existing liens (the "Prepetition Loan"), (ii) agreed to loan the Debtors additional sums as set forth below, subject to the granting of certain protections and approval by the Court (the "Post-petition Loan"), and (iii) entered into an Asset Purchase Agreement pursuant to which the Debtors agreed to sell and Fort Ashford agreed to purchase certain assets and for certain executory contracts or leases to be assumed and assigned to Fort Ashford at closing, under a mutually acceptable sale process and subject to approval by the Court.

6. In furtherance of the foregoing, the Debtors executed Promissory Notes and Security Agreements (collectively, the "Prepetition Loan Documents") which evidenced the Indebtedness and granted Fort Ashford a security interest in all or substantially all of the Debtors' tangible and intangible personal property, and Fort Ashford caused UCC-1 form financing statements to be duly recorded to properly perfect the security interests granted by the Debtors. The Debtors and Fort Ashford also executed the Asset Purchase Agreement for the sale of substantially all of the Debtors' tangible and intangible personal property, excluding certain assets which are to be retained for the benefit of the estate, and the Debtors have filed a Motion in which the Debtors seek approval of the sale on an expedited basis, free and clear of all claims, liens, encumbrances and interests, pursuant to a sale procedure which provides for the submission of higher and better bids, an auction, and approval by the Court after notice and hearing.

7. In this motion (the "Sale Motion"), the Debtors seek approval of the sale of substantially all the Debtors' tangible and intangible assets (the "Sale Assets") in accordance with the terms and conditions set forth in the Asset Purchase Agreement (attached as <u>Exhibit A</u>), free and clear of all claims, liens encumbrances and interests, excluding certain assets (the "Excluded Assets") as more particularly set forth in the Asset Purchase Agreement and generally described as (i) any cash on hand, in transit or on deposit, other than deposits and prepaid amounts paid by the Debtors' customers and paid by the Debtors to manufacturers and other third parties, (ii) any cause of action which may be brought by one or more of the Debtors, including those which may be brought as a debtor-in-possession or by a trustee on behalf of the Debtors pursuant to Chapter 5 of the Bankruptcy Code in connection with this bankruptcy case, and (iii) any assets which are not included on the list of Purchased Assets. In addition, the Debtors seek authority for the assumption and assignment of (i) such leases or executory contracts as may be specifically identified by the Purchaser in advance of the Closing (collectively, the "Assumed Contracts"), and the Debtors have filed a separate motion in this regard in conjunction with this Sale Motion.

8. Although the Debtors intend to continue operations post-petition as debtors-in-possession, such operations are not currently sufficient to support a traditional reorganization absent additional capital infusions and a corresponding increase in net revenues would be expected but cannot be guaranteed. The Debtors believe that creditors would benefit from the proposed sale to a third party, who would then be in position to infuse working capital, make the necessary capital expenditures, and maintain operations for existing and prospective customers, vendors and employees.

9. The Debtors propose that the sale of the Sale Assets be conducted pursuant to the sale procedures attached hereto as <u>Exhibit B</u> (the "Sale Procedures"), free of all claims, liens encumbrances and interests pursuant to Section 363(f) of the Bankruptcy Code. The Debtors request that the Order approving the sale (i) approve the sale and transfer of the Sale Assets to the Fort Ashford or to any party submitting the highest and best bid, (ii) transfer any and all claims, liens, encumbrances or interests in or upon the Sale Assets to the proceeds of sale, (iii) approve the assumption and assignment of the Assumed Contracts, and (iv) in the event of an auction and resulting sale at an increased purchase price, and under certain circumstances as set

forth in the Sale Procedures, approve the payment or credit for a break-up fee in the amount of $150,000 (the "Break-up Fee") to Fort Ashford.

10. The Debtors believe that the value of the Sale Assets is best realized by the proposed sale, and that the proposed Sale Procedures will enable the Debtors to obtain a purchase price which is fair, reasonable, and in the best interest of the estate. The Debtors seek authority to consummate an asset sale promptly in order to maximize the value of the Sale Assets for the benefit of creditors. The Debtors propose the following schedule for the Sale Procedure:

    a. August 24, 2010: Sale Procedure hearing, subject to Court's schedule and entry of Sale Procedure Order.

    b. September 13, 2010: Deadline to submit Initial Overbid

    c. September 13, 2010: Deadline to submit Statement of Defaults as to Assumed Contracts.

    d. September 16, 2010: Auction.

    e. September 17, 2010: Deadline to file Objection.

    f. September 21, 2010: Sale Hearing, subject to Court's schedule.

    g. September 30, 2010: Closing.

11. The Debtors seek approval of the Sale Procedures in advance of the bid process, and in order to consummate the proposed transaction and thereby preserve value for the estate, the Debtors request that the Court schedule and conduct an initial hearing (the "Sale Procedure Hearing") to:

    a. Enter an Order (the "Sale Procedure Order") substantially in the form attached hereto as <u>Exhibit C</u> (i) approving the Sale Procedures, including a Break-up Fee, (ii) approving the Notice of Sale (the "Notice") attached hereto as <u>Exhibit D</u>, (iii) making the Notice Finding (as defined below), (iv) setting a deadline for any objection to the proposed sale, and (v) scheduling a second hearing (the "Final Hearing") to finally hear all other aspects of the Sale Motion and to consider confirmation of the sale to the Purchaser (as defined in the Sale Procedures).

    b. Find (the "Notice Finding") that adequate notice of the proposed public sale of the sale assets shall consist of mailing copies of (1) the Notice to all creditors and other parties in interest, and (2) the Sale Procedure Order to:


Sale motion 2010 08 14.doc     4

Case 10-11512  Doc 16  Filed 08/16/10  Page 4 of 6

        i.        The Bankruptcy Administrator.

        ii.       The creditors included on the list filed pursuant to Rule 1007, consisting of the twenty (20) largest unsecured creditors.

        iii.      Any creditors asserting a lien upon any or all of the Sale Assets.

        iv.      Any party who has filed a notice of appearance and request for copies of any notices or pleadings filed in this bankruptcy case.

12. The Debtors will also provide copies of the Sale Procedure Order and the Notice to all entities who submit to the Debtors or to their counsel an expression of interest in purchasing the Sale Assets and written request for relevant materials, although the service of same is not required by the Bankruptcy Code or Rules.

13. As set forth in the Sale Procedures, the Debtors request that the Court require that objections, if any, to the relief requested in this Sale Motion (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules of this Court, (c) be filed with the Court and delivered to the following parties (the "Limited Notice Parties") at least three (3) business days prior to the date selected by the Court to consider approval of the Sale (the "Final Hearing"):

    a.    Michael D. West, Bankruptcy Administrator, 101 S. Edgeworth St., PO Box 1828, Greensboro, NC 27402

    b.    John A. Northen, counsel for the Debtors, Northen Blue, LLP, 1414 Raleigh Rd., Ste 435, PO Box 2208, Chapel Hill, NC 27515-2208.

    c.    Gregory B. Crampton, counsel for Fort Ashford Funds, LLC, Nicholls & Crampton PA, 3700 Glenwood Ave, Ste 500, PO Box 18237, Raleigh, NC 27619-8237.

WHEREFORE, the Debtors pray the Court for the following relief:

1. After notice and hearing, entry of a Sale Procedures Order substantially in the form attached hereto as <u>Exhibit C</u> (i) approving the Sale Procedures, including but not limited to approval of the Break-up Fee, (ii) approving the Notice of Sale, (iii) making the Notice Finding, (iv) setting a deadline for any objections to the proposed sale, and (v) setting a date for the Final Hearing to finally hear all other aspects of the Sale Motion and to consider confirmation of the sale to the Purchaser.

2. Upon conclusion of the Final Hearing, and after consideration of any competing bids, entry of the Sale Order (a) designating the Purchaser (as defined in the Sale Procedures),

(b) authorizing the sale of the Sale Assets to the Purchaser free and clear of any and all claims, liens, encumbrances and interests (c) finding that the Purchaser is a "good faith purchaser" pursuant to Section 363(m) of the Bankruptcy Code, and that none of the grounds set forth in Section 363(n) exist with respect to a sale to the Purchaser, (d) finding that one or more of the grounds for a sale free and clear pursuant to Section 363(f) of the Bankruptcy Code has been met as to each claim, lien, encumbrance or interest in any or all of the Sale Assets, and transferring any and all claims, liens, encumbrances and interests in or upon the Sale Assets to the proceeds of the sale, (e) authorizing the Debtor to assume and assign the Assumed Contracts, (f) designating a Back-up Bid, and authorizing a sale on the terms of the Back-up Bid in the event the Purchaser fails or refuses to timely close the transaction, (g) authorizing payment of outstanding ad valorem taxes for the current year and distribution of the remaining net sale proceeds (after the Carve-out), up to the full amount owed, to Fort Ashford in satisfaction of the prepetition and post-petition financing provided to the Debtors, (i) authorizing retention of the Excluded Assets and any surplus proceeds by the estate, and (j) providing such other relief as the Debtors shall reasonably request.

Respectfully submitted on behalf of the Debtors, this the 16th day of August, 2010.

/s/ John A. Northen

**Counsel for the Debtors:**
Northen Blue, LLP
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Stephanie Osborne-Rodgers, NCSB #29374
sor@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441