# SALE PROCEDURES

The following procedures (these **"Sale Procedures"**) have been approved and authorized by order (the **"Sale Procedures Order"**) dated August __, 2010 of the United States Bankruptcy Court for the Middle District of North Carolina (the **"Bankruptcy Court"**) in the chapter 11 cases of nCoat, Inc. ("nCoat"), nTech, Inc. ("nTech"), MCC, Inc. ("MCC") and High Performance Coatings, Inc. ("HPC" and collectively, the **"Debtor"**), administratively consolidated as Case No. 10-_____, and shall govern the proposed sale (the **"Sale"**), including any auction (the **"Auction"**) conducted in connection therewith, of certain assets (the **"Sale Assets"**) of Debtor, including, without limitation, the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (the **"Assigned Contracts and Leases"**), pursuant to the Debtor's motion for an order authorizing the Sale and granting related relief (the **"Sale Motion"**) in connection with the Asset Purchase Agreement dated August 13, 2010, including Schedules and Exhibits (the **"Agreement"**), between Fort Ashford Funds, LLC (the **"Buyer"**) and Debtor:

1. **Final Hearing.** The final hearing to approve the Prevailing Bidder as defined in Paragraph 13(f) herein (the **"Sale Hearing"**) shall be held before the Bankruptcy Court in Courtroom #___, 101 S. Edgeworth Street, Greensboro, North Carolina at _____.m. on September ___, 2010.

2. **Diligence by Prospective Overbidders.** Debtor shall give notice of the proposed Sale and these Sale Procedures to prospective overbidders as required by the Sale Procedures Order, receive and consider unsolicited offers for the Sale Assets, provide information to any such prospective overbidder, and allow any such prospective overbidder to conduct due diligence in connection with consideration of a potential overbid for the Sale Assets; provided, however, that any such prospective overbidder desiring to conduct due diligence shall (a) demonstrate the financial ability, as determined by Debtor in its sole discretion, to consummate a transaction for the purchase of the Sale Assets, and (b) execute a confidentiality agreement in a form acceptable to Debtor in its sole discretion. Debtor shall file with the Court, on or before the Sale Hearing, a statement identifying any prospective overbidder that Debtor does not allow to conduct due diligence because of Debtor's determination that said person does not have the financial ability to consummate the purchase and/or because of its failure to execute an acceptable confidentiality agreement.

3. **Contracts and Leases; Alleged Defaults.** Any allegation that defaults exist or must be cured as a condition to the assumption and assignment of any of the Assigned Contracts and Leases, which allegation shall include a precise statement of the nature and amounts of such alleged defaults (a **"Statement of Defaults"**), must be served upon (i) John Northen, Northen Blue, LLC, 1414 Raleigh Rd., Suite 435, Chapel Hill, NC 27517 ("**Debtor's Counsel**"), (ii) Gregory B. Crampton and Kevin L. Sink, Nicholls & Crampton, P.A., 3700 Glenwood Avenue, Suite 500, Raleigh, NC 27612 ("**Buyer's Counsel**"), and (iii) counsel for Michael D. West, Bankruptcy Administrator, 101 S. Edgeworth Street, Greensboro, NC 27401 ("**BA's Counsel**") and filed with the Bankruptcy Court, in a manner such that the Statement of Defaults is actually received by said counsel and the Bankruptcy Court by September 13,

2010, at least three (3) business days in advance of the Auction (the **"Statement of Defaults Deadline"**).

4. **Objection.** Any objection (an **"Objection"**) to the Sale Motion, including any objection to the assumption and assignment by the Buyer of any of the Assigned Contracts and Leases, must be served upon Debtor's Counsel, Buyer's Counsel, and BA's Counsel and filed with the Bankruptcy Court, in a manner such that the Objection is actually received by said counsel and the Bankruptcy Court by September 17, 2010, at least three (3) business days in advance of the Sale Hearing (the **"Objection Deadline"**).

5. **Overbid Deadline.** Any competing **"Initial Overbid"** (as described below) must be served upon Debtor's Counsel, Buyer's Counsel, and BA's Counsel in a manner such that the Initial Overbid is actually received by said counsel by September 13, 2010, at least three (3) business days in advance of the Auction (the **"Overbid Deadline"**).

6. **Consent to Assumption and Assignment of Assigned Contracts and Leases.** Any entity that fails to file a timely Objection or Statement of Defaults by the Objection Deadline shall be deemed to have consented to the relief sought in the Sale Motion.

7. **Overbid Requirements.** Any entity (other than the Buyer) that is interested in purchasing the Sale Assets (an **"Overbidder"**) must submit to Debtor's Counsel an **"Initial Overbid"** in conformance with this paragraph, and serve a copy thereof on Buyer's Counsel and BA's Counsel, in a manner such that the Initial Overbid is received by such parties no later than the Overbid Deadline. Every such Initial Overbid must:

    (a)  include (i) an executed copy of a definitive sale agreement, including schedules, having substantially similar terms and conditions as are contained in the Agreement and the Schedules thereto and (ii) a version of the Overbidder's definitive sale document and schedules redlined or otherwise marked to show any and all deviations from the Agreement and Schedules; and be a bid to purchase at least substantially all of the Sale Assets;

    (b)  contain terms and conditions no less favorable to Debtor than the terms and conditions of the Agreement;

    (c)  provide for cash consideration to Debtor of at least $250,000 more than the cash consideration to be provided by the Buyer ($100,000 more, after taking into account the Break-up Fee described in paragraph 13 below);

    (d)  be accompanied by admissible evidence, in the form of affidavits or declarations establishing the Overbidder's good faith, within the meaning of section 363(m) of the Bankruptcy Code, and its "adequate assurance of future performance" with respect to the Assigned Contracts and Leases, within the meaning of section 365(f)(2)(B) of the Bankruptcy Code;

    (e)  be accompanied by (i) financial statements or admissible evidence in the form of affidavits or declarations establishing that the Overbidder is ready, willing, authorized, capable, and qualified, financially, legally, and otherwise, of

unconditionally performing all obligations under the Agreement (or its equivalent) in the event that it submits the prevailing overbid at the Sale Hearing, and (ii) evidence that it is duly authorized and entitled to engage in the transaction contemplated by the Initial Overbid without the consent of any entity that has not been obtained;

(f) be accompanied by a deposit in the sum of $350,000 (the **"Deposit Amount"**) in the form of a wire transfer or cashier's check payable to Debtor's Counsel and to be held in a non-interest bearing trust account by Debtor's Counsel pending completion of the Auction; and

(g) include a commitment to close and consummate the Sale promptly following entry of the Sale Order, assuming no stay thereof, and in no event later than September 30, 2010.

8. **Firm Offers.** All Initial Overbids shall be "firm offers" and shall not contain any contingencies to the validity, effectiveness, and/or binding nature of the offer, including, without limitation, contingencies for financing, due diligence or inspection except for the conditions to closing provided for in the Agreement.

9. **Requirement for Overbidders to Appear at Sale Hearing.** All Overbidders shall appear in person at the Sale Hearing, or through a duly authorized representative and not solely through counsel.

10. **Non-Conforming Bids Disqualified from Auction.** Any entity that fails to submit a timely, conforming Initial Overbid, as set forth above, as determined by Debtor in its sole discretion, shall be disqualified from bidding for any of the Sale Assets at the Auction conducted prior to the Sale Hearing; provided, however, that if Debtor determines that any Initial Overbid is not conforming and therefore that the Overbidder making such Initial Bid is disqualified from participating in the Auction, Debtor shall on or before the Auction Date file with the Court and serve upon such Overbidder and Buyer's Counsel a statement explaining the grounds for disqualification ("Statement of Disqualification").

11. **Reply Date.** Debtor and other parties in interest may file responses to any Objection or Statement of Defaults at least one (1) business day before the Sale Hearing.

12. **No Conforming Overbids.** If no timely, conforming Initial Overbids are submitted, Debtor shall request at the Sale Hearing that the Court approve the proposed sale of the Sale Assets to the Buyer. Any party in interest may contest Debtor's determination as to whether an Initial Overbid is conforming, but any such contest must be in writing and served upon Debtor's Counsel, Buyer's Counsel, and BA's Counsel and filed with the Bankruptcy Court, in a manner such that contest is actually received by said counsel and the Bankruptcy Court at least one (1) business day in advance of the Sale Hearing.

13. **Auction Procedures.** In the event that one or more timely, conforming Initial Overbids are submitted (each person who has submitted such a timely, conforming Initial Overbid shall be referred to herein as a **"Qualified Overbidder"**), the Debtor

shall conduct the Auction, in which the Buyer and all Qualified Overbidders may participate. The Auction shall be held on <u>September 16, 2010</u>, commencing at 9:00 o'clock a.m. Eastern, in the offices of John Northen, Northen Blue, LLC, 1414 Raleigh Rd., Suite 435, Chapel Hill, NC 27517 (or such other location as may be determined by Debtor's Counsel and communicated to all Qualified Bidders at least three (3) business days before the Auction), and shall be governed by the following procedures:

(a) all bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction and/or the sale of the Sale Assets;

(b) bidding will commence at an amount of the highest or otherwise best conforming Initial Overbid submitted by a Qualified Overbidder, as determined by Debtor in its sole discretion;

(c) each subsequent bid by an Overbidder or the Buyer shall be in increments of at least $100,000 in aggregate consideration above the previous bid after taking into account the Break-up Fee;

(d) if, upon the conclusion of the Auction, and consistent with the terms of these bidding procedures, the Buyer has failed to make a bid that Debtor determines, in its reasonable discretion, to be the highest or otherwise best bid, after taking into consideration the Break-up Fee, Debtor will recommend that the Bankruptcy Court authorize and approve a sale of the Sale Assets (including an assumption and assignment of the Assigned Agreements) to the prevailing Qualified Overbidder;

(e) if, however, the Buyer makes a bid that Debtor determines, in its reasonable discretion, and consistent with the terms of these Sale Procedures, to be the highest or otherwise best bid compared to any bid by a Qualified Overbidder, after taking into consideration the Break-up Fee, Debtor will recommend that the Bankruptcy Court approve the Agreement and authorize Debtor to sell the Sale Assets (including assumption and assignment of the Assigned Contracts and Leases) to the Buyer; and

(f) upon conclusion of the Auction, Debtor shall designate the highest or otherwise best bidder as the prevailing bidder (the **"Prevailing Bidder"**). Any objection to Debtor's designation of the Prevailing Bidder shall be raised at the Sale Hearing and decided by the Bankruptcy Court.

13. **The Debtor's Business Judgment.** Debtor: (a) may exercise its business judgment to recommend a sale of the Sale Assets (including assumption and assignment of the Assigned Contracts and Leases) to any Qualified Overbidder whose bid Debtor determines, in its reasonable discretion, to be in the best interests of the bankruptcy estate; (b) shall consult with the Secured Creditors and any official committee or any other significant constituent in connection with the bidding process and the selection of the highest or otherwise best bid; and (c) may reject, at any time before the entry of an order of the Bankruptcy Court approving a bid from a Qualified Bidder, any bid

that, in Debtor's sole discretion, is (i) inadequate or insufficient, (ii) not in substantial conformity with the Bankruptcy Code, these Sale Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of Debtor, its estate and its creditors. In exercising its business judgment as to which bid constitutes the highest or otherwise best bid, Debtor may consider all factors which Debtor deems relevant, including but not limited to, the terms and conditions of the proposed purchase agreement, the bidder's ability to close the proposed transaction without delay (keeping in mind that time is of the essence), the scope of the proposed transaction, the form and market value of any non-cash consideration offered, the aggregate value of any assets not included in such bid and Debtor's ability to recognize such value, and the costs to Debtor's estate of any bid. Each Qualified Overbidder should be prepared to make its best and final offer at the Auction, and Debtor reserves all rights to object to and oppose any request for a continuance or recess of the Auction or the Sale Hearing. During or before the Sale Hearing, Debtor shall file with the Court a written statement identifying any bid that Debtor rejects pursuant to this paragraph and explaining the grounds for rejection and shall serve such statement on the entity whose bid is rejected and on Buyer's Counsel.

14. **Break-up Fee.** Solely in the event that the Bankruptcy Court enters an order approving the sale of the Sale Assets to an entity other than the Buyer, the Buyer has not committed a material default under the Agreement, and Debtor does not sell the Sale Assets to the Buyer, Debtor shall pay the Buyer a break-up fee of $150,000 (the "**Break-up Fee**") which will compensate the Buyer for the lost opportunity cost and the value it brought to Debtor and its estate in the form of the Agreement to serve as a stalking horse for other bids and to reimburse the Buyer for the time and effort expended and the expenses incurred in connection therewith (including, without limitation, legal and consulting fees and costs). If earned pursuant to these Sale Procedures, the Break-up Fee shall be payable to the Buyer on the earlier of (i) closing of the sale of the Sale Assets to an entity other than the Buyer or (ii) the 10th day after entry of the Sale Order.

15. **Back-up Bidder.** Upon the conclusion of the Auction, Debtor shall designate the next highest or otherwise best bidder after the Prevailing Bidder to serve as the "Back-up Bidder," provided, however, that the Buyer shall be bound by its bid only until the Bankruptcy Court has entered an order approving the sale to the Prevailing Bidder unless the Buyer agrees in writing to act as the Back-up Bidder. Any objection to Debtor's designation of the Back-up Bidder shall be raised at the Sale Hearing and decided by the Bankruptcy Court. If, for any reason, the Prevailing Bidder is unable or unwilling timely to perform its obligations under the Prevailing Bidder's definitive sale agreement and the Sale Procedures, Debtor, in the exercise of its business judgment, may sell the Sale Assets to the Back-up Bidder without further notice or a hearing. The Back-up Bidder's bid shall remain open and binding until the sale to the Prevailing Bidder closes or, if the Prevailing Bidder is unable or unwilling to close and Debtor elects to sell to the Back-up Bidder, until the sale to the Back-up Bidder closes.

16. **Disposition of Deposits.** Promptly following the Bankruptcy Court's determination of the Prevailing Bidder, the deposits submitted by the Buyer and any Overbidders shall be refunded to each unsuccessful bidder other than the Back-up Bidder, if any.

The deposit of the Prevailing Bidder and the Back-up Bidder, together with any interest earned thereon, shall be retained as earnest money to be used in the following ways: (a) the deposit of the Prevailing Bidder shall either be (i) applied at closing as a credit toward the purchase price of the Prevailing Bidder or, if the purchase price is paid in full at closing, returned to the Prevailing Bidder, (ii) if the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Prevailing Bidder, the deposit shall be retained by Debtor as liquidated damages, or (iii) in the event that the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of Debtor, the deposit shall be returned to the Prevailing Bidder; and (b) the deposit of the Back-up Bidder shall either be (i) returned to the Back-up Bidder upon the closing of the transaction with the Prevailing Bidder, or (ii) if the sale to the Prevailing Bidder shall fail to close for any reason, applied at closing as a credit toward the purchase price of the Back-up Bidder, or if the sale to the Back-up Bidder shall fail to timely close by reason of a breach or default of the Back-up Bidder, retained by Debtor as liquidated damages.

17. **Headings.** The headings of all sections of these Sale Procedures are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

[end of document]