**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| NCOAT, INC., et al., | ) | Case No. 10-11512 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER REGARDING FEES FOR SPECIAL COUNSEL**

This matter came on for hearing on April 13, 2012, upon the Application to Compensate Jeffrey M. Jones (the "Application"), filed on February 28, 2012, by the above-captioned debtor (the "Debtor"), the Objection to the Application filed by the United States Bankruptcy Administrator (the "BA") on March 13, 2012, and the Objection to the Application filed by the Official Committee of Unsecured Creditors for nCoat, Inc. (the "Committee") on March 13, 2012 (the "Committee's Objection").

With the Application, the Debtor seeks to compensate Jeffrey M. Jones and the law firm of Durham, Jones & Pinegar ("DJP") for services rendered in its capacity as special counsel to the Debtor for corporate and securities matters. Jones and DJP were authorized to perform such services pursuant to an order entered on December 8, 2010 (the "Special Counsel Order"), which granted the Debtor's Motion to Employ Jones and DJP (the "Special Counsel Motion") for the "limited purposes" of representing the Debtor "with respect to such corporate and securities matters as may be requested." The Special Counsel Motion disclosed the fact that DJP was prepetition counsel to the Debtor and was owed a prepetition debt, but did not state the amount owed, which was in excess of $500,000. Further, the Debtor asserted in the Special Counsel Motion that since special counsel employed under Section 327(e) of the Bankruptcy Code are not subject to the same strict disinterestedness standards as general bankruptcy counsel employed under Section 327(a), the

1

existence of such a relationship and a prepetition debt did not disqualify DJP from representing the Debtor as special counsel.

The BA objected to the Application by challenging the rates charged by DJP for paralegals, and recommended a reduction of such rates to $100 per hour, to which DJP agreed. The BA also objected to three expense entries due to a lack of sufficient information and explanation. The Debtor filed a response that provided the requested information.

The Committee objected to the Application on the ground that the work reflected in the Application was work typically done by general bankruptcy counsel and not by special counsel. Specifically, the Committee asserts that all work done relating to the sale of the Debtor's assets to Fort Ashford Funds and the winding up of the Debtor's business is not compensable under Section 327(e) because such work is general case administration work, for which special counsel may not be compensated.

While special counsel employed under Section 327(e) need not be disinterested, special counsel may not hold an interest adverse to the debtor or estate with respect to the matters for which counsel is to be employed. See, e.g., In re Tidewater Mem. Hosp. Inc., 1102 B.R. 221, 228 (Bankr. E.D. Va. 1989). The employment must be for a special purpose and may not involve the general administration of the estate. In re Brokers, Inc., No. 04-53451, slip op. (Bankr. M.D.N.C. Jan 14, 2005) (J. Aron). Furthermore, attorneys cannot purport to serve as special counsel to bypass disinterestedness requirements while in fact acting as bankruptcy counsel. In re Congoleum Corp., 426 F.3d 675, 692 (3d Cir. 2005) (special counsel's role in plan process was too expansive for § 327(e) and conflicts disqualified lawyer from § 327(a) employment); see also In re Running Horse, L.L.C., 371 B.R. 446, 451-52 (Bankr. E.D. Cal. 2007) (law firm employed as special counsel could

not represent Chapter 11 debtor in "conducting the case," which included matters related to formulation of a Chapter 11 plan and liquidation of the debtor's assets.); In re ACT Mfg., Inc., 281 B.R. 468, 484 (Bankr. D. Mass. 2002) (attorneys who are retained as special counsel put their fees at risk when they become involved in management of bankruptcy case, rather than confine their involvement to matters for which they were retained).

From reading the Special Counsel Motion, the Court was aware when it entered the Special Counsel Order that DJP was not eligible to be employed as counsel for the Debtor due to the existing prepetition debt owed to DJP. More importantly, DJP and the Debtor knew that DJP could not be compensated for general bankruptcy services because that situation would present a direct and actual conflict of interest.[1] No party objected to the employment of DJP for corporate and securities work, and it was incumbent upon DJP to avoid work that approached the line between general bankruptcy services and specialized corporate and securities work. The BA, the Committee, and other parties in interest were entitled to wait until DJP made application for compensation before they formed an opinion about whether the services that DJP performed crossed that line.

The Court expected that DJP would perform and seek compensation for specialized corporate and securities services of a type that are not normally performed by debtor's counsel in a liquidating Chapter 11 case. But the description of the work performed by DJP, attached to the Application,

---

[1] See In re First American Health Care of Georgia, Inc., 1996 WL 33404562, at *4 (Bankr. S.D. Ga. 1996) ("I construe Section 327(a) and (e) together as generally discouraging the employment of a creditor and as resolving any doubt in favor of denial of the application. Ultimately, the bankruptcy court, when considering the application of prospective counsel pursuant to Section 327(e) must guard against the retention of a creditor whose role as 'special counsel' has the potential of placing the professional in a de facto role which is impermissibly broad and general. To do otherwise would circumvent the 'no creditor' rule of Section 327(a) by which Congress clearly intended to eliminate from the bankruptcy process the reality, or the appearance, of a conflict of interest on the part of professionals.").

leads to the conclusion that most, if not all, of the work done by DJP did, in fact, relate to the general management of the case, and thus is not compensable under Section 327(e). Activities such as UCC searches, the winding up of the Debtor's business, employee issues, and the negotiation and closing of the sale of the Debtor's assets, are all matters directly related to the liquidation of the estate; such tasks are more properly the work of general bankruptcy counsel, especially in a pure liquidation case such as this one.[2] From the description provided, the Court was able to identify no services that are associated with specialized corporate and securities work and only one expense.[3]

Accordingly, the Committee's Objection is **SUSTAINED**.[4] In order to give DJP one last chance, it is hereby **ORDERED** that the Debtor shall have until May 18, 2012 to amend or supplement the Application to show specifically what work was done by DJP in furtherance of the limited corporate and securities work that the Special Counsel Order authorized. After considering any such material, the Court will determine which fees and expenses, if any, will be allowed under Section 327(e).

---

[2] The Debtor's motion to sell substantially all of its assets was filed on the petition date.

[3] The Application contained a $165.00 expense associated with the filing of a Form 8-K.

[4] See Running Horse, 371 B.R. at 451 (professional seeking compensation has the burden to show that the compensation is proper); In re Loop Hosp. Partnership, 50 B.R. 565, 572 (Bankr. N.D. Ill. 1985) ("[B]ecause of the circumstances of the case and the potential for conflicts of interest, the court declines to award compensation for services which are not clearly within the purpose for which the court authorized retention.").